SCHIFF ET AL., APPELLANTS, *v.* CITY OF COLUMBUS ET AL., APPELLEES.

[Cite as Schiff v. City of Columbus, 4 Ohio App. 2d 234.]

(No. 7720—Decided November 16, 1965.)

*Mr. Bruno E. Voltolini,* for appellants.

*Mr. John C. Young,* city attorney, *Mr. Alba L. Whiteside* and *Miss Georgena Howell,* for appellees.

DUFFEY, J. This is an appeal on questions of law and fact from the Common Pleas Court of Franklin County denying an injunction and dismissing appellants' petition. The action is by certain property owners for themselves and as a class. It seeks to enjoin the collection by the city of Columbus of special assessments in connection with the improvement of Livingston Avenue in that city.

Livingston Avenue is a major artery and through street in Columbus, Ohio. In 1961, the project area contained both newly developed residential subdivisions and undeveloped land. Livingston Avenue was formerly a county road having 22-foot pavement with a ditch drainage. The original right of way was 60 feet in width. The properties assessed fall into two categories. The majority, at least in frontage, abut upon the original 60-foot right of way. The improvement in front of these properties consisted of constructing a 52-foot pavement with curbs and storm sewers. There also was provided a number of individual improvements such as driveways, sidewalks, house drains, sanitary sewer connections, etc. The charges for these were either separately assessed or separately computed. We are concerned only with the assessment attributable to the road improvement itself.

The second group of properties, those of appellants, consists of the first tier of lots in several major subdivisions stretching approximately three blocks along Livingston Avenue. These lots do not abut upon the original 60-foot right of way, but rather face upon a dedicated way of up to 170 feet in width. The stipulations and testimony show that the City Planning Commission, acting under its subdivision regulatory power, required each subdivision developer to dedicate 55 feet of land frontage on Livingston Avenue, and to construct within it a residential "service road." This street serves the first tier of lots in the subdivision. Thus these lots abut directly on a fully paved residential street 25 feet in width. In front of that street

was a grass strip about 30 feet in width, which, in turn, was adjacent to the 22-foot pavement and ditch on Livingston Avenue proper.

The improvement in the area of these properties facing on the service road did not, of course, include any driveways, house drains, etc. The original 22-foot pavement was replaced with the 52-foot pavement, curbs and storm sewers (which sewers provide drainage for Livingston Avenue proper but not for the adjacent properties). The intervening "planting strip" was reduced to about 20 feet in width. Sidewalks were not installed adjacent to the lots, but rather were placed in the strip adjacent to the through street.

There is, of course, no direct access from the lots to the through traffic portion of Livingston Avenue. Both before and after the improvement, the intervening strip was a physical and legal barrier between the "service" street and the through street. Indirect access to the throughway portion is available at the end of each block, i. e., at the intersection of the service street and one of the side streets which intersects with Livingston Avenue. The lots average about 65 feet in width, and the blocks are between 14 and 18 lots long. The owner of lot 332, Pinecrest No. 2 Subdivision, would apparently travel the maximum distance, i. e., about 900 feet on the service road to the intersection of Yearling Road and then to Livingston Avenue proper.

The petition alleges, in essence, three grounds of attack on the assessment as applied to the appellants' properties.

(1) Their properties are not "bounding and abutting upon the improvement"; the assessment is based on front feet; and such a method of assessment is illegal as applied to nonabutting owners.

(2) The assessment of those lots which abut the residential "service" street, and the failure to assess other lots in the same subdivision, is an unreasonable classification and illegal discrimination.

(3) These lots do not receive any special benefit.

It is, of course, apparent that while appellants' properties do not touch upon the improvement they do abut upon the right of way, and there is no privately owned property between their property line and the improvement. However, in our

opinion, these lots are not "bounding and abutting upon *the improvement*" within the meaning of Section 727.01, Revised Code, and Section 165 of the Columbus City Charter. (Emphasis added.)

The fact that an improvement covers only a portion of the width of the street and does not actually touch adjacent property does not necessarily prevent the property from "abutting" the improvement. As a general proposition, it is enough that the property shares a common boundary with the right of way rather than with the improvement itself. *Richards* v. *City of Cincinnati* (1877), 31 Ohio St. 506; *Cohen* v. *Cleveland* (1885), 43 Ohio St. 190, at 196. See, also, cases collected in 97 A. L. R. 2d 1079. However, as pointed out in the latter annotation, this assumes that the owner has free and unimpeded access to the improvement over the intervening areas. In the *Richards case,* there was an intervening foot strip between the improvement and the property line. The court stated, at page 514:

"It seems to us that, in order to exempt these proprietors from assessment as abuttors on the improvement, it must appear that this intervening foot of land deprives them of full, free, and lawful access to the street improved; * * *. Our conclusion, therefore, is that whether this strip be or be not, strictly speaking, a part of Eggleston avenue, it presents no hindrance or let to the full, free, and lawful access of these proprietors to the avenue."

In *Cohen* v. *Cleveland* (1885), 43 Ohio St. 190, Superior Street in the city of Cleveland had a 93-foot width. The city built a viaduct on the south side of the street and opposite Cohen's property. The viaduct occupied about one-third of the existing right of way and was about 45 feet high at that point. In holding that Cohen was not "bounding or abutting upon the proposed improvement," the court said, at page 196:

"* * * In no just sense is his property a lot 'bounding or abutting upon the proposed improvement.' In reality this was no more an improvement of Superior street than an elevated railway is an improvement of a street, but the viaduct furnishes an additional and substantially an exclusive route of travel to persons going across the river."

Cohen's property clearly abutted upon the right of way,

but just as clearly he had no access to the viaduct improvement.

In *Board of Commissioners of Licking County* v. *Bolin* (1918), 99 Ohio St. 117, a strip of Ohio canal land intervened between the street improvement and the owner's property line. The owner was using, occupying and tilling the strip. In holding that the property did not abut upon the improvement, the court noted that the fee was in the state, and that it had the right to retake exclusive possession at any time. The significant point seemed to be that, while the state owned all the intervening land between the owner's land and the improvement, the fee ownership of the canal land provided the element not found in *Richards, i. e.*, the absence of any legal right of access to the improvement.

The facts in the present case are the exact inverse of another increasingly common circumstance found today. In the present case land was acquired on either side of an existing roadway, residential streets were built, and the middle portion became a through street with access only at intersecting streets. In expressway construction, such as the Columbus Innerbelt, all land between two existing streets may be acquired and an expressway built in the middle with access only at intersecting or interchanging streets. While the property owners abut upon the residential street, the denial of access to the throughway makes them, in our opinion, nonabutting as to that improvement.

Under Section 727.01, Revised Code, and Section 165 of the Columbus charter, the front-foot method of assessment is limited to property "bounding and abutting upon the improvement." See *Cincinnati* v. *Batsche* (1895), 52 Ohio St. 324, especially at 343; *Klein* v. *City of Cincinnati* (1893), 7 C. C. 266, 4 C. D. 589, affirmed in 52 Ohio St. 650. However, the appellee city contends that the assessment here was not made on the front-foot method, but rather the method used was an assessment in proportion to the benefits.

The resolution of necessity (Resolution No. 489X-60) and the ordinance to proceed (Ordinance No. 364-61) do both provide that the method of assessment shall be "in proportion to the special benefits which may result from the improvement." Under such a method of assessment, nonabutting properties must

be specifically described by their appropriate lot number. Sections 727.20 and 727.21, Revised Code (Recodification Act of 1953), and Section 166 of the charter. The descriptions found in the resolution apparently attempted to comply with that requirement. (The descriptions contain substantial errors, but since neither party has mentioned them, we express no opinion on their legal effect. Compare Section 727.32 with Section 727.39, Revised Code, both as amended effective January 1, 1962.) However, on the evidence of record, the assessment was not in fact made as prescribed by the resolution and the ordinance. The actual assessment was computed on the basis of front feet.

An assessment in proportion to benefits involves a determination of the amount of benefit to be obtained by each property. The "proportion" to be determined is the proportion that the special benefits to each property bear to the whole benefits conferred on all properties by the improvement. See discussion of the proportion method of assessment in *Chamberlain* v. *City of Cleveland* (1878), 34 Ohio St. 551. A recent example of this method may be found in the records of the Scioto Conservancy District. The proportion method of assessment is from a theoretical viewpoint the most equitable and complies most completely with the underlying concept of special benefits. However, since it involves a determination of benefits to each property, the method is cumbersome and expensive in connection with small improvements. In the case of ordinary improvements giving an obvious benefit, the theoretically less accurate but administratively easy method of front feet is permissible. That method, of course, rests on a broad, rough approximation of benefits and is, therefore, subject to abuse. The statutes and charter contain a substantial number of limitations and requirements with respect to the use of the front-foot method which are not applicable to an assessment based on a proportion to benefits.

In the present case there is no evidence of a determination of the benefit to any particular property. There is no evidence of the aggregate amount of benefits to all properties. There is no evidence that a proportion was ever determined as to each property. The report of the city engineer, being the charter equivalent of the report of a board of freeholders, is not of rec-

ord. Compare Section 168 of the charter and Section 727.44 of the Revised Code (Recodification Act of 1953). The schedule of assessments, apparently as reported by the board of revision, is included as an exhibit. The board of revision is the charter equivalent of the statutory board of equalization under Sections 727.45 and 727.46 of the Revised Code (Recodification Act of 1953). This schedule shows the dollar assessment for each property. However, it equally shows that the dollar amount was not determined on the basis of a proportion that the benefits to a parcel bore to the total benefits to all parcels. On the contrary, it shows that the method used was a common modification of the strict front-foot method.

The device used for varying or adjusting the assessment was to reduce the number of front feet to be assessed. Two parcels illustrate the method. Parcel No. 87553 abuts the original right of way. It has a 195-foot frontage and was assessed on the entire 195 feet. The amount was $1,944.84 (just a shade less than $10 per foot, the maximum amount permitted by ordinance). The depth of this parcel is 1015.14 feet. Parcel lot 862, Pinecrest Subdivision No. 3, abuts upon a service road or street. It has a 60-foot frontage and was assessed on 30 feet only. The amount was $299.21 (the same approximately $10 per foot rate). The depth of the parcel is 120 feet.

All parcels abutting on service roads were assessed on only one-half of their frontage. There is a suggestion in the evidence that this was a concession obtained by the appellants as a result of their objections. However, as the examples show, neither the size of a parcel nor its value was taken into account. Clearly there was no determination of actual benefit to a parcel, nor any attempt to arrive at a proportion of total benefits.

The present case well illustrates the broad assumptions which underlie the use of the front-foot method as an assessment. Where the improvement is simple, of obvious benefit and limited to abutting properties, and those properties are of approximately equal size and shape as in town lots, the front-foot method is administratively sound and does individual justice. If the improvement is more sophisticated, the benefits more intangible and widespread, and especially where, as here, the properties assessed are of widely varying size and frontage, it is administratively convenient, but may be unreasonably ar-

bitrary and unjust. The assessment laws of Ohio reflect this in the provisions designed to safeguard against the abuse of the front-foot method. The city here did not comply with the ordinance of its own council by computing the assessment on the basis of a proportion of benefits. The front-foot method used also violates the statutes and charter provisions applicable to such a method.

The assessment of appellants' properties and the failure to assess adjacent lots in the same subdivision is also an illegal classification and arbitrary discrimination. We find on the evidence that the special benefits, if any, which accrue to the appellants' properties are no different in kind and degree than those accruing to other lots in the same subdivisions.

With the exception of the service road or street, appellants' lots are part of conventional subdivisions laid out in blocks of lots which abut each other at the rear and face upon residential streets, each of which connects with a "feeder" street at approximately a right angle. The "feeder" leads to Livingston Avenue. Thus appellants' lots abut upon an equal number of lots facing the opposite direction onto another residential street. Across that street is another row of lots, etc.

It was conceded in argument that the storm drainage installed for the new pavement was of no benefit to the appellants' properties. It is apparent that the throughway portion does not perform the functions of a residential street. The city's brief lists five suggested benefits:

1. Sidewalks. In argument it was conceded, as it is apparent from the examination of the map, that the sidewalks installed some 45 feet from the appellants' property lines do not serve their properties—at least in any degree more than the general public.

2. Greater safety by (a) elimination of the old high crown road, (b) new nonskid pavement, (c) greater width, and (d) better intersections. The first three items are of no greater significance to appellants than to the general public unless it be upon the theory that appellants would use the pavement for access to their properties. However, it is clear that their access is directly on the service street and only indirect to the Livingston throughway. In terms of physically reaching the new pavement, their position is identical to their neighbors to

the rear, *i. e.*, they must move to a ''feeder'' street and then to the Livingston throughway.

In terms of frequency of use, appellants and their visitors will use the throughway pavement immediately opposite their properties considerably less than other people in the general area. Appellants would move on the service road (*i. e.*, east to Westphal Avenue or west to Harlow Road) and then to Livingston proper. Thus they would have little occasion to travel on that portion of the throughway, and would almost never travel it for purposes of access, *i. e.*, coming or going directly from or to their property.

3. Convenience, ease and time saved in traveling to and from their properties. The city engineer testified that the new pavement and greater capacity of the throughway make it ''quicker and easier travel to downtown or his place of business or where he may wish to drive to or from.'' Assuming this to be a special benefit for which an assessment could be levied, it is clearly of no greater benefit to appellants than to their neighbors in the lots abutting their immediate rear. Those people would travel the depth of two lots (240 feet) more than appellants to reach the Livingston throughway and then would obtain from it exactly the same benefit. To assess appellants for such a benefit and not their neighbors is discriminatory.

4. The benefit of a major arterial highway which reduces the traffic ''congestion'' within view of appellants' properties. This contention is, in effect, that, although there may be more traffic per hour and per day, the new four lanes and higher speed will make the area less congested than before. Congestion, of course, depends upon the volume of traffic in relation to road capacity. As many engineers have learned, increasing an urban street capacity frequently causes increased volume with the result of greater congestion than ever before. However, regardless of the speculative nature of this testimony and ignoring even the question of what is esthetic, we cannot find a special benefit such as would justify an assessment merely from the fact that it might be ''somewhat more esthetic to look upon a street with no congestion than to look upon a street that is congested.''

5. Easier access to their properties via the service road due to the lowering of the grade of the Livingston throughway and the intersections. This contention overlaps the previous

ones. It refers to the fact that the service streets and other subdivision streets were constructed to grade while the old pavement had a county road high crown. There was therefore a noticeable rise of from two to four feet from the grade to the old pavement which was eliminated by the new project. Again it is apparent that any benefit resulting is no greater to appellants than to their neighbors to the immediate rear.

There is also the testimony of Mr. Griffith. As a real estate expert he testified that he was asked in preparation for this suit to determine "if there were or were not any special benefits." He testified that he made no appraisal of any particular parcel, but rather a "general appraisal of the whole area, neighborhood trends and so forth." He stated that in his opinion there was a "boulevard effect" to the new improvement, and "if you look over this boulevard effect, you have got a more saleable property than you did with this dam effect, and this is what I based my judgment on." (The "dam" effect refers to a rise of earth up to several feet used to form the old drainage ditch beside the old pavement.) Assuming this testimony suggests a general property value increase, and that this esthetic impact on value could be considered a special benefit, there is nowhere any suggestion of how much of an increase or what relationship the increase in value would have to the determination of the assessment.

The city contends that the determination of council that special benefits will accrue "will not be disturbed by the courts in the absence of a showing of fraud or an abuse of discretion." Our attention is directed to the provision of the resolution and of the ordinance to proceed that "said lots and lands are hereby determined to be specially benefited by said improvement and in the amounts to be determined."

As the Supreme Court stated in *Cincinnati* v. *Batsche* (1895), 52 Ohio St. 324, at 342:

"* * * such declaration of benefits to accrue was only the finding and recital usual in ordinances providing for assessments, whether by benefits, by valuation, or by foot front, that the property to be assessed is the property benefited. Such declaration by the council, that the property specially assessed will derive a special benefit, is only the statement of a legal presumption that accompanies every special assessment to pay for a street improvement. * * *"

It is certainly true that there is a general presumption in favor of the validity of the assessment, at least in the sense that the burden is upon the appellants to prove it invalid. It is also true that if the city council or a duly authorized official or board has made factual determinations such as an appraisal of benefits to a particular parcel, a court would not consider the factual issue *de novo*, but would review only to determine whether the finding was reasonable.

However, in this case, the city did not produce any appraisal report or other fact finding made by the city engineer, by the board of revision or by the city council. In *Chamberlain* v. *City of Cleveland* (1878), 34 Ohio St. 551, paragraphs three and nine of the syllabus state:

"3. Where the proceedings in an appropriation assessment, on the principle of special benefits, merely show upon their face, that the agregate amount of the assessment is placed on 'benefited property,' it will not be conclusively presumed that the assessment is limited to the special benefits conferred, or that it has been properly apportioned amongst the several lots or lands assessed."

"9. Where the city council determines that the amount of the assessment does not exceed the value of the benefits specially conferred, its judgment in the premises, in the absence of fraud, is final and conclusive, unless modified by the council before the final confirmation, as provided in section 588; but when the municipal authorities, in levying special assessments, do not undertake to determine the amount of the special benefits conferred, either in respect to the amount assessed, or in the apportionment of the burden, the assessment may be enjoined; and in an action for that purpose parol evidence may be introduced to show that the authorities did not act on the proper basis."

It is our finding on the evidence adduced that:

1. The appellants' lots are not "bounding and abutting upon the improvement" within the meaning of Section 727.01 (C) of the Revised Code, and Section 165 (c) of the Columbus City Charter; and that the assessment is based on front footage within the meaning of those sections, and that accordingly the assessment is invalid as applied to those properties.

2. That any special benefits accruing to appellants' properties equally accrue to other properties which are adjacent or

near to the improvement, and that an assessment against appellants' properties only is discriminatory and illegal.

It should be noted that this opinion does not suggest that the city could not levy a valid special assessment on these properties in connection with this improvement. Nonabutting properties can, of course, be assessed either by the valuation method or in proportion to benefits. An assessment for a street improvement upon a district which included adjacent but nonabutting properties has been recognized as valid. In *Cincinnati* v. *Batsche* (1895), 52 Ohio St. 324, the court commented, at page 341:

"A plan of assessment in proportion to resulting benefits, distinct from that according to valuation, and that by the foot front, is therefore provided by statute, which is not limited to lots and lands bounding and abutting upon the improvement, but may be extended to lots and lands contiguous and adjacent, though situated on streets other than that of the improvement."

See, also, *Klein* v. *City of Cincinnati* (1893), 7 C. C. 266, 4 C. D. 589, affirmed in 52 Ohio St. 650; and *Meissner* v. *City of Toledo* (1877), 31 Ohio St. 387.

However, the city must recognize that the usual assessment upon abutting properties for a portion of a major artery improvement has always been based primarily on the premise that the artery also performs the function of a residential street for those properties, *i. e.*, direct access, drainage, etc. Where, as here, there is a separate residential street, and there is no direct access, that function is not performed, and that benefit does not exist. If the city believes there are other special benefits conferred by such an improvement, it may use them as a basis for assessment. The assessment district for such a levy would have to include all parcels which receive the benefits relied upon, and the method of assessment would have to comply with law.

The judgment of the Common Pleas Court will be reversed and vacated. A final judgment granting the permanent injunction against the collection of the present assessment as against the appellants' properties will be granted.

*Judgment reversed.*

Duffy, J. (Presiding), and Troop, J., concur.