SCHIFF ET AL., APPELLEES, v. CITY OF COLUMBUS ET AL., APPELLANTS.

(No. 40179—Decided January 18, 1967.)

34

*Messrs. Frick & Volotini* and *Mr. Bruno E. Volotini*, for appellees.

*Mr. John C. Young*, city attorney, *Mr. Alba L. Whiteside* and *Miss Georgena Howell*, for appellants.

TAFT, C. J. Plaintiffs contend and the Court of Appeals found that plaintiffs' lots were not "bounding and abutting upon the improvement" of Livingston Avenue. In our opinion, it is not necessary to consider whether they were or were not. The contention, that they were not so bounding and abutting, was apparently made because both Section 727.01 (c), Revised Code, and Section 165 of the Columbus Charter limit use of the front-foot method of assessment to property "bounding and abutting upon the improvement." However, all the evidence, including the resolution declaring the necessity of and the ordinance determining to proceed with the improvement, indicates that the assessments were to be made in proportion to the special benefits resulting from the improvement; and both Section 727.01, Revised Code, and Section 164 of the Columbus City Charter authorize "special assessments" not only "upon the abutting, adjacent and contiguous" but also upon "other specially benefited" land. See *Chamberlain* v. *City of Cleveland* (1878), 34 Ohio St. 551 (paragraph four of syllabus); *City of Cincinnati* v. *Batsche* (1895), 52 Ohio St. 324, 341, 40 N. E. 21.

The only evidence as to the amounts of assessments on individual lots was an exhibit identified only as a "schedule of assessments."

Because the amount of the assessments on plaintiffs' lots usually equaled about $5 a front foot, and because the amount of the assessments on other lands, admittedly bounding and abutting on Livingston Avenue, usually equaled about $10 a front foot, the Court of Appeals concluded that the front-foot method of assessment had been used. However, no one testified that it had. Further, no records were offered tending to show that that method had been used.

From the resolution, ordinance and the testimony of the city's Chief Engineer, it is established without dispute that $10 represents what the resolution and ordinance refer to as the "rate * * * per assessable unit." The facts, that the number of assessable units assigned to a lot bounding and abutting on Livingston Avenue usually equals about the front feet of that lot and that the number of such units assigned to a lot of plaintiffs' bounding and abutting only on a service road (with four exceptions) usually equals about one-half of the front feet of that lot, do not indicate that assessments were not made in proportion to benefits. The four exceptions demonstrated this. For example, the number of such units assigned to lot 173 in Thunderbird Acres, which bounds and abuts only on a service road, equals only one-fourth of the frontage of that lot. An examination of the "schedule of assessments" indicates the reason for this, i. e., the depth of lot 173 is only 70 feet instead of the usual 120-foot depth of the lots bounding and abutting on a service road.

Where lots of the same depth are so located that they are likely to receive comparable benefits from an improvement, apportionment of assessments in proportion to benefits will usually result in assessments also being in proportion to the front feet of such lots. The fact, that they are, does not indicate that assessments were made on a front-foot basis instead of in proportion to benefits. See *Spangler* v. *City of Cleveland* (1885), 43 Ohio St. 526, 537, 3 N. E. 365, quoted *infra*; *Shoemaker* v. *City of Cincinnati* (1903), 68 Ohio St. 603, 613-14, 68 N. E. 1.

The Court of Appeals based its judgment in part upon a conclusion that, in levying the assessments enjoined, Columbus had not complied with certain legal requirements of statutes and of the City Charter.

For example, it found that there was no evidence of or determination of the actual benefit to any parcel, no evidence of the aggregate amount of benefits to all properties and no determination of the proportion that the benefits to any parcel bore to the total benefits to all parcels.

Further, the Court of Appeals found that there was no report of the City Engineer, as required by the Charter, and no evidence that the Board of Revision, as required by the Charter, either adopted the engineer's report or issued any report of its own other than the "schedule of assessments." The latter schedule is identified in the stipulation of the parties only as the "schedule of assessments," and there is nothing in the record tending to prove that such schedule was adopted by the Board of Revision as found by the Court of Appeals.

Where a party seeks, in equity, to enjoin the collection of an assessment on the ground that certain legal requirements were not complied with in making the assessment, such party has the burden of alleging and proving that such requirements were not complied with. *Bolton* v. *City of Cleveland*, 35 Ohio St. 319 (paragraph three of the syllabus and page 322 in the opinion); *Chesbrough* v. *Commissioners*, 37 Ohio St. 508 (paragraph five of the syllabus and page 518 in the opinion); *Spangler* v. *City of Cleveland, supra* (43 Ohio St. 526) (paragraph one of the syllabus). In the latter case, it is said in the opinion by Follett, J., at pages 536 and 537:

"* * * Plaintiff claims the benefit of the *facts*—of what *was in fact done*—as opposed to *presumptions*; yet she did not try to show *what* was in fact done, and she now seeks the benefit of a *conclusive* presumption, that *nothing* was done that was not fully recorded and shown by the particular records plaintiff gave in evidence. [Emphasis not added.]

"The facts asked by plaintiff to be presumed are such as plaintiff could seek to establish with evidence; and, as it does not appear that any evidence was offered that the court did not

receive and consider, we must disregard presumptions, and we must look only to the plaintiff's evidence for the proof of her right to an injunction.

"* * *

"In her amendment to the petition plaintiff averred, 1. 'There has never, by anybody, been a valuation of any special benefits conferred by said opening of Hough avenue;' 2. 'nor has there ever been a determination that said assessment was apportioned in proportion to the special benefits derived from such opening;' 3. 'or that said assessment did not exceed said benefits;' 4. 'and in truth and in fact said assesment was not on the property benefited thereby, but only on the property fronting on said street.' All these averments were denied; and the plaintiff had the burden of proving a clear right to an injunction; and, in proof of the averments and of such right, * * * plaintiff put in evidence certain records and papers, some that tended to prove and some that tended to disprove the averments. The paper showing an assessment and the paper showing the equalization of the same, did not prove the assessment to be by the front foot merely, but at least that the same may have been 'in proportion to benefits.' * * * The defendants were not called upon affirmatively to establish a right or a valid assessment. For aught that appears, there may have been record evidence of a valid assessment, which the plaintiff would not introduce, and the defendants need not introduce."

Not only does the petition in the instant case fail to allege the noncompliance with legal requirements, found by the Court of Appeals, but the findings of the Court of Appeals indicate no evidence to sustain its finding of such noncompliance. This case differs from *Chamberlain* v. *City of Cleveland, supra* (34 Ohio St. 551), where it was affirmatively established by evidence that there had been no compliance with the legal requirements for the assessments.

Plaintiffs allege and contend that no special benefits accrued to plaintiffs as a result of the improvement.

The Court of Appeals made no finding in response to this contention. Its findings "that any special benefits accruing to * * * [plaintiffs'] properties equally accrued to" and "are no

different in kind or degree from those accruing to some of the other lots in the same subdivision which were not assessed'' will be discussed later.

As plaintiffs contend, it is often stated that ''the benefits * * * to private property from the construction of a public improvement, which may be made the basis of an assessment, must be *special benefits*, by which is meant benefits above and beyond those which are enjoyed in common with the public at large or with the rest of the community.'' 49 Ohio Jurisprudence 2d 244, Section 7. (Emphasis not added.)

Such statements have generated some confusion. For example, it is sometimes argued that, since the general public can and will use a particular improvement as much as or more than the owner of nearby property, there can be no special benefit to such owner from the improvement. See, for example, the Court of Appeals' opinion in the instant case (4 Ohio App. 2d 234, at 241, paragraphs numbered 1 and 2).

The enhancement in the value of property that results from a public improvement is the special benefit that will support an assessment against that property to pay for the improvement. Such enhancement in value of such property is a benefit to its owner that accrues to him and not to the public or to the rest of the community.

In *Walsh* v. *Barron, Treas.* (1899), 61 Ohio St. 15, 55 N. E. 164, it is stated in the opinion by Minshall, J., at page 24: ''* * * an assessment, being sustainable only on the theory of special benefits conferred on the land by the improvement over those received by the general public, is necessarily limited to the *value of the benefits* so conferred. The *value of* the entire *benefits* so conferred may be assessed upon the land for the cost of the improvements; more, however, cannot be exacted, without impairing the inviolability of private property, guaranteed by the Constitution, or in other, if not more appropriate words, confiscating it.'' (Emphasis added.)

In order to be entitled to an injunction against any part of an assessment for the cost of a public improvement against a lot, the owner thereof has the burden of proving that the lot was not enhanced in value as a result of the improvement in an amount equal to the amount of the assessment. See *Spangler*

v. *City of Cleveland, supra* (43 Ohio St. 526), *Bolton* v. *City of Cleveland, supra* (35 Ohio St. 319).

There is no evidence in the record that would support any such conclusion with respect to any of plaintiffs' lots. There is not even any evidence as to the value of any lot, either before or after the improvement.

This case differs from *Alf* v. *Flick, Dir.* (Hamilton County C. P. 1962), 1 Ohio Misc. 17, 204 N. E. 2d 418, where the evidence established and the court found that the value of the properties assessed for an improvement had not been enhanced but had been reduced as a result of the improvement.

As hereinbefore mentioned, the Court of Appeals in the instant case found "that any special benefits accruing to * * * [plaintiffs'] properties equally accrued to" and are "no different in kind or degree from those accruing to some of the other lots in the same subdivision which were not assessed."

Based upon this finding of fact, the Court of Appeals concluded that an assessment levied only upon those lots in a subdivision that abutted on service streets was an illegal classification and an arbitrary discrimination.

The burden of proving the facts, so found by the Court of Appeals, as a basis for that conclusion, was on plaintiffs. They offered no evidence as to the value of any lot or parcel of land either before or after the improvement. Hence, it is impossible to determine that any unassessed lot in a subdivision was enhanced in value by the improvement as much as an assessed lot in such subdivision.

There was evidence which would support a finding that most of the potential benefits from the improvement, that accrued to the assessed lots in a subdivision, would also accrue to lots therein that were not assessed. However, we believe that the evidence establishes as a matter of law that potential benefits from this improvement accrued to the lots, which front on the service streets and were assessed, but did not accrue to the other lots in the subdivision, which did not front on the service streets and were not assessed.

For example, before this improvement, the roadway of Livingston Avenue was elevated about two feet above the adjacent land. On either side of the roadway was a drainage ditch,

two feet wide at the bottom and two to four and one-half feet deep. Thus, those subdivision lots, that fronted on a service street, looked out on a dirt dam about two feet high and about 70 feet away. Next to that dam was a two to four and one-half foot deep drainage ditch. On top of the dam were automobiles and trucks frequently involved in traffic jams and accidents, resulting from the availability of only two lanes for traffic and the archaic condition of the roadway. Such a view from the front of a lot would obviously have an adverse effect on its value as compared with any lot in the subdivision which did not have such a front view or was not as close to it.

After the improvement, there was no longer the unsightly two-foot dam and open drainage ditch. Instead, there was a modern four-lane curbed highway at the level of the adjacent land. Thus, the record discloses that the lots in a subdivision, that fronted on a service street, did receive from this improvement of Livingston Avenue a potential special benefit that did not equally accrue to other lots in the same subdivision.

It may be that the value of this particular potential special benefit to each of the lots of plaintiffs exceeded the amount of the assessment (approximately $300 to $375 per lot) against it. If it did, then the assessments against plaintiffs' lots could be justified as being for special benefits not accruing to other unassessed lots in the subdivision.

There being no evidence as to the value of any lot before and its value after the improvement, it is impossible to determine whether the value of this particular special benefit to any one of the lots of plaintiffs, that did not accrue to other lots in its subdivision, did not equal or exceed the amount of the assessment against it.

It was stipulated that the cost of this improvement was $597,213 and that the total assessments were only $229,925.89. The difference between the cost and the assessments will be paid by Columbus. The amount paid by Columbus may well include payment for all those special benefits to plaintiffs from the improvement that accrue equally to other unassessed lots in the same subdivisions.

In our opinion, therefore, there is no factual basis on the record in this case for the contention that the levying of assess-

ments, only upon those lots in a subdivision which abutted on service streets, involved an illegal classification or an arbitrary discrimination.

Furthermore, the omission of benefited property from the area, that encompasses property assessed for an improvement, has been held by respectable authority not to deprive the owner of property, that is assessed, of due process of law or of the equal protection of laws, if there is no showing that the omission was arbitrarily or fraudulently made. *Butters* v. *City of Oakland* (1923), 263 U. S. 162, 68 L. Ed. 228, 44 S. Ct. 62; *Moore* v. *City of Yonkers* (2d Cir. 1916), 235 F. 485, 9 A. L. R. 590; *Close* v. *Parker, Treas.* (1908), 11 C. C. N. S. 85 (affirmed without opinion, 79 Ohio St. 444); *Weston* v. *Commrs. of Hamilton County* (1892), 6 C. C. 641 (affirmed without opinion, 30 W. L. B. 291).

In the instant case, there is no contention that other lots in the subdivisions, where plaintiffs' lots are located, were fraudulently omitted from assessment. It is obvious that plaintiffs' assessed lots were closer to the improvement than the unassessed lots in their subdivisions. In such an instance, it cannot be inferred that the lots not assessed were arbitrarily omitted from assessment, especially where there is no evidence of an equal or greater increase in the value thereof as a result of the improvement. As stated in the opinion in *Close* v. *Parker, Treas., supra* (11 C. C. N. S. 85), at page 87:

"* * * if in seeking to assess all property benefited we go beyond the abutting property [or, as in the instant case, that not abutting but substantially next to the improvement], it is a little difficult to tell where to stop; that is, if the court assumes that other property is so benefited that it was the duty of the assessing authorities to assess such other property, there would seem to be hardly a limit to the jurisdiction of the court as to the boundaries of territory which might be assessed * * *."

We therefore conclude that there is no evidence in the record to support plaintiffs' contention that no special benefits accrued to plaintiffs as a result of the improvement; and that there is no evidence in the record to support the findings of the Court of Appeals (a) that the front-foot method of assessment had been used, (b) that, in levying the assessments, Co-

lumbus had not complied with certain legal requirements, and (c) that any special benefits accruing to plaintiffs' properties equally accrued to the other lots in the same subdivision which were not assessed.

It follows that the judgment of the Court of Appeals must be, and it hereby is, reversed, and final judgment is rendered for appellants.

*Judgment reversed.*

ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and SCHNEIDER, JJ., concur.
BROWN, J., dissents.