**DILLON et al., Appellants,**

**v.**

**McNEEL, Clerk, et al., Appellees.**

[Cite as *Dillon v. McNeel* (1990), 68 Ohio App.3d 219.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–874.

Decided June 26, 1990.

*Boehm, Rance, Pritchett, Brantner & Robison Co., L.P.A., William E. Rance* and *Clark P. Pritchett, Jr.,* for appellants.

*Bricker & Eckler, Richard C. Simpson* and *Anne Marie Sferra,* for appellees.

STRAUSBAUGH, Judge.

This is an appeal by plaintiffs from a summary judgment rendered in favor of defendants by the Franklin County Court of Common Pleas. Summary judgment was entered on plaintiffs' complaint, brought pursuant to R.C. Chapter 2723, which sought to recover certain assessments collected by defendants for improvements allegedly made to real property owned by plaintiffs.

Defendant, the city of Worthington, Ohio ("Worthington"), adopted Ordinance No. 75–84 on September 24, 1984 which declared the necessity of improving Huntley Road from East Dublin–Granville Road to a point approximately three thousand nine hundred feet north of the northerly right-of-way of East Dublin–Granville Road. Plaintiff, Ben Tom Corporation ("Ben Tom"), owned real estate which abuts Huntley Road immediately south of its intersection with Schrock Road and located to the north of the northern terminus of the proposed improvements. Pursuant to R.C. 727.13, Worthington notified Ben Tom on October 3, 1984 that its real property was subject to assessment for the improvements to Huntley Road. Following objections filed by a number of property owners, including Ben Tom, to the proposed assessments, Worthington appointed an Assessment Equalization Board to evaluate the objections. Following a hearing on December 5, 1984, the Assessment Equali-

zation Board recommended that all objections to the proposed assessments be overruled and that the estimated assessments be approved. Worthington adopted the report on January 14, 1985.

The improvements were completed primarily in 1986. In the interim, however, Ben Tom sold its real estate to plaintiffs, Ben and Marcia Dillon ("plaintiffs"). The terms of the purchase contract allegedly recited that Ben Tom had received notice of the proposed assessment by Worthington against the subject property in the approximate amount of $42,000, that the appeal of that assessment which had been initiated by Ben Tom should be continued by plaintiffs, that the responsibility for payment of the assessment, if and when paid, would be Ben Tom's, and that the funds would be escrowed out of the proceeds of the sale for that purpose. Ultimately, on March 9, 1987, Worthington adopted Ordinance No. 19–87 which levied assessments for the completed improvements against a number of property owners, including plaintiffs. The amount of the final assessment against plaintiffs' property was computed to be $42,835.70.

Pursuant to R.C. 2723.03, plaintiffs deposited the sum of $42,835.70 with defendant, Janice M. McNeel, Clerk of Council of the city of Worthington, Ohio ("clerk"), along with a letter indicating that payment was made under protest. Thereafter, on July 9, 1987, plaintiffs and Ben Tom initiated the instant action pursuant to R.C. 2723.01. Although the complaint set forth two claims, only the first is at issue in this appeal. That claim alleged that because the real property neither bounded and abutted the improvements nor was located between the termini of the improvements, the attempt by Worthington to assess the property was contrary to Ordinance Nos. 75–84 and 19–87. The complaint further alleged that the assessments were therefore illegal, invalid, and without force and effect, and prayed to recover the $42,835.70. Both plaintiffs and defendants then filed motions for summary judgment. The common pleas court, on August 30, 1988, granted summary judgment in favor of defendants on both of plaintiffs' claims.

Plaintiffs then initiated the instant appeal and set forth the following two assignments of error:

"1. The court erred, as a matter of law, in finding that the motion for summary judgment of the defendants-appellees should be granted as to the first claim of the plaintiffs-appellants' complaint and that the motion for summary judgment of the plaintiffs-appellants should be overruled.

"2. The court erred, as a matter of law, in failing to find that the motion for summary judgment of the plaintiffs-appellants should be granted and that the motion for summary judgment of the defendants-appellees should be overruled as to the first claim of the plaintiffs-appellants' complaint."

Plaintiffs' assignments of error are interrelated and will be considered together.

The improvements to Huntley Road were performed under authority of Ordinance No. 75–84. The ordinance of necessity states in pertinent part:

"SECTION 4. A portion of the total cost of said improvements shall be assessed against the properties benefited thereby in proportion to the benefits conferred by the improvements, *calculated as follows:*

"A. The City shall pay project costs relating to water line replacement, acquisition of traffic control devices and signage.

"B. The cost of exclusive right-turn lanes shall be assessed against the individual parcels served by such turn lanes.

"C. The City shall pay 52 percent of the balance of project costs remaining after deducting the foregoing items, which 52 percent is hereby determined to be greater than the minimum statutory payment of 2 percent plus the cost of intersections.

"D. Forty-eight percent (48%) of the balance of the project costs remaining after deducting the foregoing items shall be assessed against the benefited properties as follows:

"1. two-thirds (⅔) of such balance shall be assessed in proportion to the area of the benefited properties; and

"2. one-third (⅓) of such balance shall be assessed in proportion to the frontage of the benefited properties on Huntley Road.

"Such assessments, calculated as set forth herein, shall be assessed upon all lots and lands *bounding and abutting* upon the proposed improvements between the termini aforesaid, which lots and lands are hereby determined to be specifically benefited by said improvements * * *." (Emphasis added.)

Section one of the Ordinance Levying Assessments provides in relevant part:

" * * * The revised assessment of the cost and expense of improving Huntley Road * * * is hereby adopted and confirmed and there be and are hereby levied and assessed upon the lots and lands *bounding and abutting* upon said improvement the several amounts * * * which assessments are in proportion to the special benefits * * *." (Emphasis added.)

The trial court, in granting summary judgment for defendants, noted that the method of assessments for the improvements was based upon the "benefit method" authorized under R.C. 727.01(B). The court, citing as authority the case of *Schiff v. Columbus* (1967), 9 Ohio St.2d 31, 38 O.O.2d 94, 223 N.E.2d 54, held that under the "benefit method" it was not necessary to determine

whether lots are bounding and abutting. The trial court further found that " * * * plaintiffs have admitted that their property was benefited by the improvements * * *."

The decision in *Schiff, supra,* is inapplicable to this controversy. Under the assessing ordinances involved in *Schiff,* the city council did not limit its determination of the benefited properties to those lots and lands which bounded and abutted the street improvements.[1] Moreover, we disagree with the trial court's determination that plaintiffs admitted, for purposes of their first claim before the trial court, that their property was benefited by the improvements.[2] Even assuming such an admission by plaintiffs, the question is not whether plaintiffs believed they were benefited by the improvements but rather whether city council determined that plaintiffs' property was specially benefited under the assessing ordinances.

Accordingly, the issue in the instant case is whether the assessing ordinances as enacted were valid so as to properly assess plaintiffs' property. R.C. 727.01(B) provides that special assessments may be levied "[i]n proportion to the benefits which may result from the improvement." R.C. 727.10, pertaining to the description of lots and lands specially assessed, states:

"In all proceedings in which lots or lands are to be charged with special assessments to pay any part of the cost of a public improvement, such lots and lands bounding and abutting upon the improvement may be described as all the lots and lands bounding and abutting upon such improvement between and including the termini of the improvement and those lots and lands which do not so bound and abut may be described by their appropriate lot numbers or by metes and bounds."

---

**1.** Although the assessing ordinances involved in *Schiff v. Columbus* (1967), 9 Ohio St.2d 31, 38 O.O.2d 94, 223 N.E.2d 54, are not included in the opinion of the Supreme Court, the ordinances were discussed in *Schiff v. Columbus* (1965), 4 Ohio App.2d 234, 33 O.O.2d 280, 211 N.E.2d 917. The appellate court noted that "[t]he resolution of necessity * * * and the ordinance to proceed * * * do both provide that the method of assessment shall be 'in proportion to the special benefits which may result from the improvement.'" *Id.* at 238, 33 O.O.2d at 283, 211 N.E.2d at 921. The court observed that " * * * [u]nder such a method of assessment, nonabutting properties must be specifically described by their appropriate lot number." *Id.* at 238–239, 33 O.O.2d at 283, 211 N.E.2d at 921. The court further noted that the descriptions contained in the resolution, although containing errors, attempted to comply with that requirement and " * * * since neither party has mentioned * * * [the errors], we express no opinion on their legal effect." *Id.* at 239, 33 O.O.2d at 283, 211 N.E.2d at 921.

**2.** The apparent basis for the court's finding on this issue was certain language appearing in paragraph fourteen of plaintiffs' complaint. This language, relating solely to plaintiffs' second claim for relief, constituted an alternative form of pleading which was inapplicable to plaintiffs' first claim before the trial court or to the issue presently on appeal.

It is clear, based upon the language of the assessing ordinances, that the only lots and lands determined to be specifically benefited by the improvements are "all lots and lands bounding and abutting upon the proposed improvements between the termini aforesaid." The ordinances make no attempt to identify any nonabutting lots and lands by their appropriate lot numbers or by metes and bounds.

Black's Law Dictionary defines the term "abut" as " * * * to touch * * * join at a border or boundary * * * [t]he term 'abutting' implies a closer proximity than the term 'adjacent.' * * * " Black's Law Dictionary (5 Ed. 1979) 11. One Ohio court has held that "[b]y bounding and abutting under the assessment laws of Ohio is meant a physical contact between the improvement and the assessed property." *Menefee v. Cincinnati* (1959), 109 Ohio App. 97, 98, 10 O.O.2d 261, 262, 159 N.E.2d 917, 918.

The evidence, which includes a plat submitted by defendants depicting the proposed improvements, indicates that the improvements made pursuant to the ordinance of necessity do not touch plaintiffs' property.[3] Further, defendants have admitted through interrogatories that plaintiffs' property is not located between the northerly right-of-way of East Dublin–Granville Road and a point three thousand nine hundred feet plus/minus north of the northerly right-of-way of East Dublin–Granville Road.

Accordingly, the assessing ordinances did not authorize a special assessment against plaintiffs' property and any attempt by the city to do so was illegal and void. As noted in *Menefee, supra,* at 98, 10 O.O.2d at 262, 159 N.E.2d at 920:

" * * * [T]he special benefits are expressly limited to the property that 'abounds and abuts' and under the legislation of council could not be imposed on any other. If a different plan had been followed, an enlarged area might have been included, provided the special benefits extended beyond the abutting property." See, also, 49 Ohio Jurisprudence 2d (1961) 266, 267, Special Assessments, Section 22 (" * * * [A]lthough a municipal corporation may not be limited to the assessment of bounding and abutting property but may also assess specially benefited property, if, by the improvement legislation, provision is made only for special assessments against the property that 'bounded and abutted' the improvement, this represents a legislative determination by

---

**3.** Plaintiffs' brief asserts that the southern-most property line of plaintiffs' property is located approximately five hundred and thirty-five feet from the northern terminus of the improvements. Plaintiffs have provided an affidavit and plat submitted by a registered surveyor as evidence. Based upon this plat, the northern terminus of the improvements is at a minimum several hundred feet from the southernmost property line of plaintiffs' property.

the municipal corporation that the special benefits are expressly limited to the bounding and abutting property, and other property cannot be assessed. * * * ").

Defendants cite *Mittendorf v. Ironton* (1953), 95 Ohio App. 417, 53 O.O. 463, 120 N.E.2d 473, in support of their position. We find the reasoning applied in *Mittendorf* to be questionable in light of the controlling statute in effect at the time of that decision.[4] A reading of *Mittendorf* indicates that the resolution of necessity involved in that action failed to properly define the plaintiff's nonabutting property as required by statute and that the proposed assessment therefore should have been invalid as to her property.

Defendants further contend that plaintiffs should be estopped from presently asserting that their property was unlawfully assessed due to plaintiffs' failure to contest the assessment at an earlier date. Defendants argue that plaintiffs did not object that their property was not properly defined in their written objection requesting the appointment of an Assessment Equalization Board, nor did plaintiffs attempt to appeal the decision of the city council adopting the recommendations of the board to the common pleas court in 1985. We find no merit in defendants' contentions.

Assuming that the Assessment Equalization Board was empowered to determine whether plaintiffs' property was properly included under the legislative definition of the benefited properties, we might hold otherwise. However, we know of no power invested in the board to make that determination and defendants have cited no authority for such a proposition. It is the duty of the Assessment Equalization Board "to determine whether the complaining property owner's land will benefit from the improvement and, if so, to what extent. * * * "[5] *Tolson v. Oregon* (1976), 53 Ohio App.2d 183, 184, 7 O.O.3d 251, 251, 372 N.E.2d 1360, 1362.

The record indicates that plaintiffs, following receipt of notice from defendants of a final assessment, tendered payment to the clerk and timely commenced an action against defendants under authority of R.C. Chapter

---

4. Ohio G.C. Section 3826, the enabling legislation in effect at the time of the decision in *Mittendorf v. Ironton* (1953), 95 Ohio App. 417, 53 O.O. 463, 120 N.E.2d 473, provided that in describing lots and lands which do not bound and abut upon the improvement " * * * it shall be sufficient to describe the lots by their appropriate lot numbers, and the lands by metes and bounds * * *." In *Mittendorf*, the Ironton City Council enacted a resolution of necessity which provided that the cost of the improvement would be assessed in proportion to the resulting benefits upon all lots and lands bounding and abutting the proposed improvement. The property belonging to plaintiff did not abut the improvement but was nevertheless assessed.

5. The powers and duties of the Assessment Equalization Board are set forth under R.C. 727.17.

2723. Under the circumstances of this case, plaintiffs' actions in contesting the assessment were appropriate.

Based upon the foregoing, plaintiffs' assignments of error are sustained and the judgment of the trial court is reversed. As we find no genuine issues as to any material facts, the trial court is instructed to enter summary judgment for plaintiffs pursuant to their motion.

*Judgment reversed*
*and cause remanded.*

REILLY, P.J., and MCCORMAC, J., concur.