ALF ET AL. *v.* FLICK, DIR., ET AL.*

[Cite as Alf v. Flick, 1 Ohio Misc. 17.]

(No. A-164702—Decided November 1, 1962.)

INJUNCTION: Court of Common Pleas, Hamilton County.

*Messrs. Goodman & Goodman, Henrietta M. Bain,* for plaintiffs.

---

*Judgment affirmed (Hamilton County Court of Appeals, No. 9300). Motion to certify the record overruled (Supreme Court, No. 38642), June 3, 1964.

*Mr. James W. Farrell, Jr.,* city solicitor, and *Isabel Guy,* for city of Cincinnati.

HESS, J.  This cause came on to be heard on the pleadings, evidence, briefs and arguments of counsel, and was submitted to the court for determination.

On February 3, 1954, Council of the City of Cincinnati passed a resolution declaring it necessary to improve Brotherton Road by repaving it with a 40-foot concrete roadway with concrete curbs integral with the pavement.  The work also included some realignment of sharp angles, construction of some additional storm sewers, the enlargement of some existing sewers, and the installation of street drains and inlets.  (Exhibit 21)  This resolution (Section 4) further provided that the city of Cincinnati would pay from bond funds and other available public funds 50 per cent of the cost of the street work, all the cost of the sewer work, except for a sewer in proposed Bob Jones Court (not involved in this action), all the water main cost, all the property cost, and any portion *not assessable because of statutory limitations.*  This section further provided for the assessment of the balance of the cost in proportion to benefits, and specifically determined that the property abutting the improvement would be specially benefited.

The portion of Brotherton Road to be improved is about a mile long, and the new paving replaced an existing macadam roadway varying in width at the western end from 36 feet to 24 feet.  A section about 1300 feet long, from Paxton Woods Lane to east of Allendale Drive, had no curbs and mud gutters. (Exhibits 5 and 18, and photographs in Exhibit 32.)

Prior to the passage of the resolution of necessity, council had before it via the city manager information and advice from various city departments as to the existing conditions on the street, the proposed plan, estimates of cost, financing, relationship of the proposed improvement to other capital improvements, etc.  (Exhibits 2, 3, 5, 13, 14, 17, 18, 19, and 20.)  Brotherton Road was an old and important street in the city.

Following passage of the resolution of necessity, legal notice was served on all the property owners (Exhibits 21 and 22, and stipulation).

Following completion of the work, council appointed an estimating board in accordance with the state statutes on assessments to estimate the assessments in proportion to the benefits. This board submitted a report as to the estimated assessments, with the specific finding that "it is our opinion that the assessments proposed herein are proper, within statutory benefit and value limitations, and in proportion to the benefits conferred by the improvement." (Exhibits 24 and 25.) An analysis of the figures in this report shows assessments of $7017.80 for special water and sewer connections and driveways, and assessments in proportion to benefits on the abutting property of $141,097.80. This was $4,873.23 less than the maximum assessment provided for in the resolution of necessity. (Defendant's answer, page 6.)

Protests were filed by many property owners, and in accordance with state statutes council appointed an equalizing board to hear the protests. This board, after taking an oath to fairly and impartially perform its duties, and after hearing evidence presented by the property owners and their witnesses, filed a report, equalizing the assessments by decreasing some and increasing others, and specifically finding that in the board's opinion the proposed assessments were within statutory benefit and value limitations. (Exhibits 26 and 27.)

Some of the property owners further protested the findings of the equalizing board. At that point the finance committee of council held a hearing on the matter. This hearing was a matter of discretion with council and was in addition to any statutory procedure. Property owners appeared, with others, before this committee and again presented evidence and arguments in protest to any assessment. As a result of this hearing, the finance committee of council found that in its opinion the portion of the cost borne by the public should be increased and recommended the reduction of the assessments against the residential property to 75 per cent of the benefits found by the equalizing board. (Exhibit 27.) This recommendation was approved by council and the assessment was levied in accordance with that recommendation. (Exhibit 15.)

This resulted in the following apportionment of cost as between the public and the property owners:

|  | Amount | Percent of Total Cost |
|---|---|---|
| Assessments for sewer and water connections and driveways | $ 7,017.80 | 2- |
| Assessments in proportion to benefits to abutting private property | 111,418.75 | 33- |
| Portion paid by city from bond and other funds (including assessments against city-owned property of $1027.50, $4873.23 in excess of benefits found by boards, and $21,633.75 of benefits to abutting property transferred to public's portion) | 220,133.58 | 65% |
| Total cost | $338,570.13 | 100% |

About 1100 feet at the western end of the improvement between Madison Road and about 200 feet east of Marburg Avenue is zoned Business A and B. The use is mixed, the property being used for a used car sales lot, a moving and storage company, filling stations, post office, auto repairs, roofing company office, pony keg, flower shop, restaurant, two 8-family apartment buildings, and about 20 one and two-family residences. The balance of the street is zoned Residence C and was nearly all developed prior to the improvement. The use of this property consisted largely of one, two and four family residences, a little business as a non-conforming use, and a golf club. A few apartment buildings have been constructed since the improvement on most of the remaining undeveloped property. Several of the plaintiffs purchased their property and moved to the street during the construction period or shortly thereafter.

Exhibits 29, 30 and 31 are three traffic counts. The first one was taken prior to the improvement toward the east end of the street in the residential area. The two taken after the improvement was completed are near the east end of the street in the business section. One was taken shortly after the improvement was completed, and the other three years later. In

the three-year period there was about a 16 per cent increase in number of vehicles at approximately the same location.

Although the first traffic count was taken at the east end of the street in the residential area and the second and third at the west end in the business area, an analysis of the three counts as to the comparative number of vehicles using the street is as follows:

| Time | Total Cars | Cars Per Minute |
|---|---|---|
| 6:00 to 9:00 A. M. | | |
| 4/22/52 | 1627 | 9 |
| 9/12/55 | 1862 | 10- |
| 8/18/58 | 2111 | 12- |
| 9:00 to 3:00 P. M. | | |
| 4/22/52 | 1542 | 4- |
| 9/12/55 | 2480 | 7- |
| 8/18/58 | 3031 | 8- |
| 3:00 to 7:00 P. M. | | |
| 4/22/52 | 2455 | 10- |
| 9/12/55 | 3017 | 13- |
| 8/18/58 | 3322 | 14- |
| 7:00 to 12:00 P. M. | | |
| 4/22/52 | 1198 | 4 |
| 9/12/55 | 1522 | 5 |
| 8/18/58 | 1972 | 7- |
| 12:00 M to 6:00 A. M. | | |
| 4/22/52 | 370 | 1- |
| 9/12/55 | 508 | 2- |
| 8/18/58 | 441 | 1- |

The assessment involved 191 separately owned parcels. The owners of 100 parcels joined in the petition in the within cause. However, the assessments on three of the parcels had been paid without protest prior to bringing the suit, and the owners of two other parcels later withdrew from the suit, bringing the number of separate ownerships involved to 95, with a total assessment of $49,383.28 (exclusive of assessments for sewer and water connections and drives which are not contested.) This represents 44 per cent of the total assessment for benefits.

(Counsel for plaintiffs figures of 150 plaintiffs includes multiple ownerships and some of the assessments paid or dismissed.)

At the hearing in this matter many of the plaintiffs testified and it was stipulated the testimony of the other plaintiffs would be substantially the same. Expert testimony was presented by real estate brokers.

All the evidence presented by the plaintiff supported the conclusion that the improvement of Brotherton Road had adversely affected the value of their property; that the increase in passenger vehicles and trucks, particularly during the morning and evening rush hours, makes it necessary for property owners to wait long periods of time before they can join the flow of traffic; that heavy trucks cause serious vibrations which have resulted in cracked walls and other damages in their homes; that the noise from vehicles requires their windows to remain closed; that their porches and property immediately fronting on Brotherton Road cannot be enjoyed because of the traffic noise; that it is dangerous to permit children in close proximity to the street; that, in most instances, the value of their property has decreased in value since Brotherton Road has been resurfaced; and, that since Brotherton Road has been improved it is known in the general real estate market as a "no contract" street—which means that real estate brokers are unable to sell properties on that street for a price reasonably commensurate to the market price thereof before the street was improved.

It was further established by the testimony that prior to the improvement of the street it was an ordinary residential street commensurate with other residential streets in the immediate area; and, that since improvement has been made the street has become a busy and much traveled highway connecting several industrial areas.

The evidence further establishes the undisputed fact that the improvement of Brotherton Road was a part of the Master Plan of the city of Cincinnati proposed by the City Planning Commission in 1947 and approved by the city council in 1948, and subsequently included in the 1953 Capital Improvement Program approved by the city council in 1953. The im-

provement of Brotherton Road was in conjunction with, and as a part of, the plan of the city of Cincinnati for the elimination of the Baltimore and Ohio grade crossing on Madison Road and was necessary to be completed as a preliminary stage to provide for additional traffic load created by the construction of the Oakley overpass on Madison Road.

No testimony was presented by the defendants to dispute the testimony presented by the plaintiffs in relation to the facts presented herein.

The only evidence offered by the defendants was the records of the city of Cincinnati leading to the final action imposing the special assessments.

Finally in relation to the facts it will be observed from the record the petition for a restraining order was filed before the special assessment was certified to the auditor of Hamilton County, Ohio.

This court has viewed the premises with counsel and has repeatedly driven over Brotherton Road at various times of the day and night before and after the improvement.

Actually there is no substantial dispute on the facts presented to the court in this cause.

## THE ISSUE

It is the contention of the plaintiffs herein there is no basis for the special assessment levied in this cause in that the improvement has provided no special benefits to the property owners assessed, but in fact has caused a depreciation in the value of their property; and that the city council of the city of Cincinnati abused its discretion in finding there was a "special benefit" to the plaintiffs' property.

The defendants claim the sole issue before the court is whether the legislative authority abused its discretion in finding a special benefit to the property of the plaintiffs; that the record fails to disclose any fraud, deceit or abuse of discretion in establishing the special assessment; and that in the absence of fraud, deceit or abuse of discretion on the part of the council of Cincinnati the plaintiffs have no cause of action.

## DECISION

There is no real dispute on the facts presented to the court. The proceedings of the legislative authority are valid on their face. The evidence offered by the plaintiffs at the hearing herein supporting the contention there was not and is not any benefit to the plaintiff-property owners is not controverted.

The plaintiffs diligently pursued their contention and filed this action before the assessment was certified to the auditor of Hamilton County.

The general rule controlling the validity of Special Assessments is found in 49 Ohio Jurisprudence (2d) 244, Section 7, which states:

"The Ohio Courts have made it very clear that the benefits resulting to private property from the construction of a public improvement, which may be made the basis of an assessment, must be *special benefits*, by which is meant benefits above and beyond those which are enjoyed in common with the public at large or with the rest of the community."

If it appears that the construction is one of general benefit, then the establishment of a special assessment "constitutes a violation of the constitutional prohibition against the taking of private property for a public use without compensation, and an injunction will lie * * *."

In *Wewell* v. *City of Cincinnati*, 45 Ohio St. 407, the Supreme Court in 1887 held that the foundation of special assessments for public improvements is the special benefit derived by the owners over and above the rest of the community (at page 424).

The most recent reported case involving a special assessment is *D'Antuono* v. *City of Springfield*, 114 Ohio App. 102, which involved the assessment for the cost of construction of *new* sidewalks upon abutting property owners. In granting an injunction against the collection of the assessment, the Court of Appeals for Clark County stated:

"* * * Mr. Schutte, who was president of the city commission when the sidewalk was constructed, testified that the improvement resulted from a petition received from people living in the Sweetbriar Addition who had children going to Kenwood

School and who were concerned about the exposure of their children to vehicular traffic. Other testimony of the same witness further indicates that the construction of the sidewalk may have been a 'community project,' thus lending credence to the contention that the general public was the real beneficiary so far as any immediate use of the sidewalk was concerned.

"It is well established that assessments may be based on potential and prospective benefits to land, but an assessment that completely ignores the difference in value between an immediate opportunity of use and a use that is prospective only is generally regarded as arbitrary and unreasonable. Here the prospective benefits appear too speculative and remote to justify the assessment. We realize that courts may not interfere with the discretionary power of the legislative body of the city concerning benefits except in those cases where there is a clear abuse of discretion. But in our opinion, this is such a case."

It is to be noted from the foregoing opinion that the Clark County court enjoined the collection of the assessment in the face of the strong presumption of benefit accruing to abutting property owners, which presumption is applicable in cases involving sidewalks. The court took into particular consideration the fact that there had been no change in the use to which the abutting property had been devoted during the four (4) years which ensued from the time of the construction of the sidewalk to the date of trial. In this connection, it must be noted the evidence is that there has been no change in the character of the use to which the abutting property, in the instant case, has been devoted in the period of some seven (7) years ensuing between the completion of the improvement and the date of trial.

It is further of interest that defendants did not present any evidence whatsoever to support the action of the council. The only other evidence offered by defendants were copies of reports submitted to council and legislation adopted by the council.

There was no evidence of any increase in the value of abutting property; no evidence of any other benefit accruing to the abutting property; no evidence that Brotherton Road, prior to its improvement, was inadequate to serve the need of abutting

property; no evidence that since the improvement of Brotherton Road the use or enjoyment of the abutting property has been enhanced; and no evidence that either the estimating board, the equalizing board, the finance committee, or the council considered any of the foregoing.

The purport of the defendants' argument and brief is that in the absence of proof of fraud, deceit, or abuse of discretion on behalf of the defendants, the plaintiffs have no right to question the assessment regardless of whether any benefit was conferred.

The legislative authority found that the property belonging to plaintiffs was specially benefited by the improvement of Brotherton Road; all of the evidence presented to this court was that there was no benefit whatsoever to plaintiffs' property either of a special or a general nature, and that, in most instances, there was actually a depreciation in value realized as a result of the improvement. The evidence was that plaintiffs and their counsel pointed out to the legislative authority that there would be no benefit to plaintiffs' property; that this is the only point of view which was expressed to the legislative authority (there having been no evidence presented by defendants that any other point of view was presented to the legislative authority); that despite these protestations on the part of plaintiffs, the legislative authority enacted the assessing ordinance; and that no special benefit did accrue to plaintiffs' property.

In the case of *State, ex rel. Blackwell,* v. *Bachrach,* 73 Ohio Law Abs. 204, the city council had determined that although it had before it initiative petitions containing in excess of 19,000 signatures, which signatures had not been found by it to be invalid, these 19,000 signatures were insufficient to meet the required 15,388 signatures. It was argued, on behalf of the council, that a court could not substitute its judgment for the legislative determination of insufficiency in the absence of a showing of abuse of discretion on the part of the council in making its determination. The court found this argument to be without merit. The finding of the court was affirmed by the Supreme Court of Ohio in 166 Ohio St. 301.

In the *Blackwell case,* counsel for defendants argued that

this court could not substitute its judgment for that of the city council where, in effect, the council had determined that one plus one equals three. In this case, counsel for defendants urge upon the court the proposition that the court ought not to substitute its judgment for a determination by the council that there was a special benefit when, in fact, none resulted or could reasonably have been expected to result.

Similar reasoning was recently applied by the Court of Appeals of Hamilton County in the case of *Stueve* v. *City of Cincinnati,* 15 O. O. 2d 424, where the council had determined that property owners were required to replace paving other than concrete in that portion of driveways lying between the sidewalk and the street with concrete. The Court of Appeals found that such a determination constituted a clear and palpable abuse of power and was, therefore, confiscatory and constituted the taking of property without due process of law.

Counsel for defendants has attempted to distinguish the *D'Antuono case* on the grounds that (1) the property involved was agricultural land and (2) that the legislative authority had assessed the entire cost of the sidewalk improvement against the abutting property. We believe that a reading of the Clark County Court of Appeals opinion invalidates such an argument. That court found (1) that the use to which the abutting property had been devoted both prior to and subsequent to the installation of the improvement was the same; (2) that the improvement had not benefited the property; and (3) that any prospective benefit would be too speculative and remote to justify an assessment. It is submitted that is practically the exact situation in which the owners of property abutting Brotherton Road find themselves, and that rather than being distinguishable from the *D'Antuono case* the plight of plaintiffs is identical.

It cannot be assumed in light of modern day highway transportation that the mere improvement of a street will bring benefit to abutting property owners and subject them to assessment. This fact is recognized by planning and legislative authority. The expressways are the shining example.

The authorities presented by counsel for the defendant supporting the contention the court has no right to question an

28

assessment when it has been levied by legislative authority in keeping with procedure established by law are all distinguishable in the instant case. None of those cases have all the elements involved in this matter.

This court must conclude from the evidence presented on behalf of the plaintiffs herein that the action of council imposing the assessment against the plaintiffs has been proven to be confiscatory in nature and an abuse of power and discretion; and that the defendants should be enjoined from collecting the assessment which is the subject of this action.

This decision applies only to plaintiff-property owners in this action. The property owners abutting Brotherton Road not parties to this action have no issue before the court.

*Permanent injunction granted.*