CITY OF RENO, NEVADA, a MUNICIPAL CORPORATION, APPELLANT, v. D. W. FOLSOM, T. E. AND A. R. NEVIN, G. G. AND G. C. HIRSCH, L. W. KNUF, J. J. AND J. M. HART, J. F. AND M. C. FARNESI, RESPONDENTS.

No. 5820

January 26, 1970                    464 P.2d 454

*Clinton E. Wooster,* City Attorney, of Reno, for Appellant.

*Cooke & Roberts,* of Reno, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

This is an appeal by the City of Reno from a judgment of the Second Judicial District Court declaring special tax assessments that had been levied against certain Reno property owners, respondents in this case, illegal on the grounds that the City had acted arbitrarily and fraudulently in making the assessments. We agree with the conclusion of the district judge, and we affirm the judgment.

### 1. *The Facts*

On August 22, 1966, the City Council of the City of Reno enacted Ordinance 1658, which created a special improvement district, known as 1966 Street and Alley Improvement District No. 1. Included in the improvements was the installation of curbs, gutters, paving, and sidewalks on California Avenue, which is part of an east-west arterial highway running through the City. The respondents' properties front on Vale Street in Westfield Village, located in the City, and their backyard property lines abut the north boundary of California Avenue. As a result of the special improvements, California Avenue was changed from a two-lane to a four-lane highway and extended to a retaining wall constructed near the owners' rear property line. The existing grade was increased, and a chain fence was

installed along the north boundary of the Avenue, next to the owners' properties. The owners were assessed on a frontage-foot basis for the cost of the sidewalk, curb, gutter, and two traffic lanes. The two inner traffic lanes were not included in the special assessment.

On September 11, 1967, the City conducted a public hearing for the purpose of reviewing and confirming the assessment roll, which had been prepared by City Assessor Donald Peckham. He had fixed the individual assessments as follows:

| | |
|---|---:|
| D. W. Folsom | $1173.75 |
| T. E. and A. R. Nevin | 998.47 |
| W. G. Hirsch | 998.47 |
| L. W. Knuf | 998.47 |
| J. J. and J. M. Hart | 998.47 |
| J. F. and M. C. Farnesi | 1194.73 |

The respondents appeared with their counsel at the September hearing and challenged the assessment roll, claiming that their properties were in no way benefited by the improvements and that, in the absence of a showing of some benefit to the properties, the assessments were illegal and void.

The City Council denied the property owners' pleas and confirmed the assessment roll. The owners appealed to the district court, upon the principal contention that the City had acted arbitrarily in refusing to consider the question of benefits, if any, to the properties assessed. The district judge agreed with the owners, and now the City has appealed to this court seeking a reversal.

## 2. *Special Benefits*

A special assessment tax is predicated upon the theory that the proposed improvements of the assessment district will result in a benefit to those property owners included in the assessment. This is the very essence of and the only justification for the special assessment. As the court declared in Cain v. City of Omaha, 60 N.W. 368 (Neb. 1894), at 369: ". . . [T]he only foundation for a local assessment lies in the special benefits conferred by the improvement, and . . . a local assessment beyond the special benefits conferred is a taking of private property for public use without compensation."

"Benefit" in this sense has been well defined by the California court in Spring St. Co. v. City of Los Angeles, 148 P. 217, 219 (Cal. 1915), in these words: "That the return to the property owner by way of benefit is, under our system of government, the basic foundation upon which this right [to levy

special assessments] rests, becomes apparent from the consideration that, if we are not able to say that the owner for the specific charge imposed is compensated by the increased value of the property, then most manifestly we have a special tax upon a minority of the property owners, which tax is for the benefit of the public and which tax is special, unequal and ununiform."

The High Court, in the landmark case of Norwood v. Baker, 172 U.S. 269 (1898), in emphasizing the constitutional guaranties involved in such special taxation, has laid down the following rules. At 279: "[T]he guaranties for the protection of private property would be seriously impaired, if it were established as a rule of constitutional law, that the imposition by the legislature upon particular private property of the entire cost of a public improvement, irrespective of any peculiar benefits accruing to the owner from such improvement, could not be questioned by him in the courts of the country."

At 278: "[T]he principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement."

And further at 279: "[T]he exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation." (Emphasis in original.)

See also Safeway Stores, Inc. v. City of Burlingame, 339 P.2d 933 (Cal.App. 1959); Town of Fort Lupton v. Union Pac. R. R. Co., 399 P.2d 248 (Colo. 1965); Village of Northbrook v. Steerup, 158 N.E.2d 630 (Ill. 1959); Chicago & N. W. Ry. Co. v. City of Omaha, 57 N.W.2d 753 (Neb. 1953); Alf v. Flick, 204 N.E.2d 418 (Ohio Ct.Comm.Pl. 1962).

It is well established that a special assessment, absent a benefit to the property assessed, is illegal and void.

3. *Duty of City Council*

We turn to consider whether in the instant case there was any consideration by the City Council that the improvements for which the special assessments were levied against the property owners resulted in benefits to the properties assessed. We find nothing in the record of the proceedings before the City Council hearing on September 11 that would reflect a finding

that any benefit accrued to the properties assessed. The record at best is sketchy, consisting of the minutes of the meeting and certain exhibits of maps of the area involved and copies of the ordinance and assessment roll. This becomes vitally important because, as we state later in this opinion, the review of the action of the City Council by the district court is limited to a consideration of the record made before the Council. As the court said in Miller & Lux, Inc. v. Board of Supervisors, 208 P. 304, 311 (Cal. 1922), which was a case involving an irrigation assessment district, in which the plaintiff claimed that no evidence was introduced before the board affirmatively showing that its lands would be benefited by the proposed plan of irrigation: "The court is limited in its proceedings to review the order of the board of supervisors to the record there made, . . . ." The court further stated that in the absence of such evidence in the record the order of the board would be overruled.

While the assessment roll is prima facie evidence of the regularity of the assessments, it is nothing more, and once, as in this case, the property owners challenge its validity on the ground that there is in fact no benefit accruing to their property as assessed, then the burden shifts to the administrative agency that caused the roll to be prepared to show and to find that there is a benefit. This could be done by calling the official who prepared the assessment roll and having him explain the basis for the assessments—in this case, the City Assessor, who was present at the September 11 hearing before the City Council but did not testify.[1] The record of the hearing fails to reflect that "benefit" was ever considered—the sole basis for the assessment evidently being that the owners' properties abutted the improved Avenue.[2] This will not suffice, for as the court said in Alf v. Flick, supra, at 425:

"It cannot be assumed in light of modern day highway transportation that the mere improvement of a street will bring benefit to abutting property owners and subject them to assessment.

---

[1]City Assessor Donald Peckham did testify later, at the October 10, 1968, trial before the district judge, that *there was no benefit* to the assessed property:

"Q [by Mr. Bruce Roberts, attorney for plaintiffs (respondents herein)] It is true, is it not, Mr. Peckham, that you do not consider there has been any benefit to those lots by reason of that improvement?

"A Yes, sir, that would be true."

[2]According to the minutes of the meeting: "Even though street improvement is painful [one] Councilman . . . stated he did not see how the City could grant the relief requested . . . ."

This fact is recognized by planning and legislative authority. The expressways are the shining example."[3]

There is nothing in the record of the proceedings before the City Council to suggest that the question of benefit to the property assessed was even considered.

### 4. *Permissible Scope of Review*

All the parties agree that the scope of review by the district court is limited to the record made before the administrative tribunal and that, in the absence of a showing that the agency acted fraudulently or arbitrarily, the district court may not substitute its opinion for that of the City Council. NRS 271.455(1);[4] Urban Renewal Agency v. Iacometti, 79 Nev. 113, 379 P.2d 466 (1963); McKenzie v. Shelly, 77 Nev. 237, 362 P.2d 268 (1961); City of Henderson v. Henderson Auto Wrecking, Inc., 77 Nev. 118, 359 P.2d 743 (1961); Nevada Tax Comm'n v. Hicks, 73 Nev. 115, 310 P.2d 852 (1957).

In the present case, at the October 10, 1968, trial, the district judge had before him the record of the proceedings of the September 11 hearing before the City Council. Nevertheless, trial witnesses were called by the respondents and testified without objection on the issue of benefit. While this went beyond the permissible scope of review, it was harmless in this case, for the reason that the record of the hearing before the City Council failed to suggest any benefit to the property assessed, and in the absence of such evidence in that record, the order of the City Council approving the assessment roll was illegal and void.

Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.

---

[3]In most cases, the installation of curbs, gutters, sidewalks, and improved roadways fronting one's property improves it. But not necessarily so when the improvement abuts the rear of the property and, because of an increased street elevation or other factors caused by the improvement, access to the property becomes practically impossible.

[4]NRS 271.455(1):

"Whenever the governing body of any municipality within this state has made any contract for any project provided herein or shall hereafter make any assessment against any tract within any improvement district for any purpose authorized herein, and has in making such contract or assessment acted in good faith and without fraud, or shall hereafter act in good faith and without fraud, the contract and assessment shall be valid and enforcible [sic] as such, and the assessment shall be a lien upon the tract upon which the same purports to be a lien."