L. D. ALBERTY, YOSHIKO ALBERTY, JAMES J. BALK, ROBIN E. CONRADO, KIM N. CONRADO, ALEX P. CORONEOS, DOROTHY CORONEOS, ROBERT R. HASH, ANGELA HASH, STELLA A. KEMP, IVAN M. LIVESAY, DOROTHY LIVESAY, KEITH LOPEMAN, LACRETA LOPEMAN, MARSHALL 1977 TRUST, PAUL T. MARSHALL, CAROL D. MARSHALL, CO-TRUSTEE, HAROLD L. MILLER, LAURA J. MILLER, MOOSO FAMILY TRUST, DAVID J. MOOSO, MARILYNN T. MOOSO, TRUSTEES, GLEN S. SMITH, KATHERINE A. SMITH, WILLIAM SPELLMAN, CAROLYN SPELLMAN, HERSHEL L. TRUMBO, MILDRED TRUMBO, HERSHEL TRUMBO LTD. PARTNERSHIP, RICHARD B. VINCENT, AND RENEE VINCENT, ATLANTIC CITY TRUST, SUCCESSOR TO PLAINTIFFS ALTON J. WALTERS AND SANDRA WALTERS, Appellants, v. CITY OF HENDERSON, NEVADA, AND LORNA KESTERSON, LORIN L. WILLIAMS, ANDY HAFEN, CARLTON LAWRENCE, MICHAEL HARRIS, AND EACH OF THEM IN THEIR CAPACITY AS MEMBERS OF THE CITY OF HENDERSON, NEVADA CITY COUNCIL, Respondents.

No. 20397

May 16, 1990

792 P.2d 390

*Vargas & Bartlett* and *Mark A. Kemp,* Las Vegas, for Appellants.

*Shauna M. Hughes,* City Attorney, Henderson, for Respondents.

## OPINION

*Per Curiam:*

Appellants are real property owners in the City of Henderson, Nevada. Respondents (henceforth, City of Henderson) have

established estimated special assessments to be levied against appellants' property in order to pay for various municipal improvements, such as paving. Appellants contend that the estimated special assessments were manifestly excessive and, hence, invalid. We hold that, based on this record, appellants have not demonstrated that the estimated assessments were invalid. However, appellants were not allowed to present any evidence in district court to show that the proposed assessments were excessive. This was because previous decisions of this court limit the district courts' review of proposed assessments to the record made before the city council or other city agency. For reasons of fundamental procedural fairness, we conclude that this case must be remanded for further proceedings to allow appellants the opportunity to present evidence on the sole issue of the estimated special assessments and benefits.

## FACTS

The basic facts of this case are not in dispute. On September 16, 1986, the City of Henderson proposed Local Improvement District (LID) No. 818, which called for mandatory paving of some 28 streets and, at the option of landowners, installation of water and sewer mains and laterals. As required by NRS 271.280, the city council directed the city engineer to estimate both the maximum special benefits accruing to each landowner due to the improvements and the maximum possible assessments to be levied against each landowner in order to pay for the improvements.[1] The city engineer prepared these estimates for each landowner affected by LID No. 818.

On February 2, 1988, the city council accepted and adopted the estimates. The only evidence in the city council record to support the estimates is a conclusory opinion by two city engineers stating that it was their opinion that the improvements would actually benefit each parcel by the estimated amount. The engineers' report states that the opinion is based on the engineers' personal inspection of each tract and on the engineers' "general familiarity" with this real estate market.

As required by NRS 271.305, the city council notified affected

---

[1]"Special benefit" means "the increase in market value of a tract that is directly attributable to a project for which an assessment is made as determined by the local government that made the assessment." NRS 271.208. Under NRS 271.300, no individual assessment to pay for a LID can exceed the estimated special benefit accruing to that landowner. The underlying idea is that landowners should not be specially taxed for municipal improvements except to the extent that the improvements actually benefit the landowners' property. For this reason, the amount of each estimated assessment is usually close to the amount of each estimated benefit.

landowners that they could object to the estimated assessments at a public hearing. By letter dated February 29, 1988, the city council informed landowners of the public meeting which was scheduled to be held one month later, on March 29, 1988. Following the hearing at which landowners voiced their general objections, the city council reaffirmed the estimates and ordered construction to proceed. Pursuant to NRS 271.315, several property owners appealed the council's action to district court. The district court stated that it could not take any new evidence and that its review was limited to the record before the city council. Following argument from counsel, the district court, sitting without a jury, affirmed the city council estimates. Several property owners appeal the district court's judgment to this court.

## LEGAL DISCUSSION

I.  *Standards of review of municipal actions in creating local improvement districts.*
    A.  *Substantive standards of review.*

Citing NRS 271.025 and Salla v. City of Winnemucca, 85 Nev. 222, 452 P.2d 969 (1969), the City of Henderson argues that courts must affirm all municipal estimates of special benefits and assessments in the absence of a showing of fraud by the city. This contention is without merit, because our cases since *Salla* have not limited judicial review to the fraud standard. We have held that, even absent evidence of fraud, *final* assessment rolls are merely *prima facie, i.e.,* rebuttable evidence of the validity of the assessments. City of Reno v. Folsom, 86 Nev. 39, 43, 464 P.2d 454, 456-57 (1970). The same is true for the *preliminary* estimated assessments and benefits at issue in this case.

Although courts are not limited to the fraud standard of review, the standards of judicial review in these cases are deferential toward the municipality. The estimated assessments and benefits are presumptively valid and the burden of proving the contrary rests on the landowners. NRS 271.025; Brown v. City of New York, 416 N.W.2d 574, 576 (Neb. 1987); Nolan v. Bureau of Assessors of N.Y. City Fin. Admin., 286 N.E.2d 435, 438 (N.Y.Ct.App. 1972). To satisfy this burden, landowners must prove that the city did one of the following: acted fraudulently, used an arbitrary *method* for reaching the estimates, reached individual benefits estimates which were manifestly erroneous because they were unsupported by substantial evidence, *or* failed to follow mandatory statutory procedures for creating the LID. *See generally* 4 McQuillin *Municipal Corporations* § 38.56 (3d

ed. 1987); *Folsom, supra* (stating a standard of arbitrariness or fraud); Urban Renewal Agcy. v. Iacometti, 79 Nev. 113, 379 P.2d 466 (1963) (applying substantial evidence standard to findings made by municipality in connection with an urban renewal plan). Additionally, courts may set aside individual assessments on the grounds of irrational discrepancies between the amounts of assessments established for similarly situated landowners. *McQuillin* at § 38.05.

## B. *The scope of the record for purposes of judicial review.*

We have held that, in reviewing municipal actions taken in connection with improvements, the scope of review by the courts is limited to the record made before the city council, and that courts may not consider evidence beyond the record before the city council. *Folsom,* 86 Nev. at 44, 464 P.2d at 457; *Iacometti,* 79 Nev. at 118, 379 P.2d at 468. The rule limiting the scope of the record in these cases is of judicial, not legislative, origin. The rule was intended to encourage deference to municipal actions, based in part on the recognition that courts are less competent to conduct fact-finding on complex planning issues than the legislative bodies of municipalities. *Iacometti,* 79 Nev. at 118-19, 379 P.2d at 468-69.

While we will continue to apply the rule announced in *Iacometti* in other cases, we conclude that this rule may be unfair as applied to landowner appeals of estimated assessments pursuant to NRS 271.315. These estimates can have a profound impact on persons living in areas to be improved. In the present case, some landowners testified before the city council that their estimated assessments were greater than the market value of their land; they said that this meant they could lose their land, or, at least, prevent them from ever building on it. In order to prevent unjust or oppressive assessments, Chapter 271 of the Nevada Revised Statutes clearly contemplates that a special assessment should never exceed the amount of special benefits accruing to each landowner. *See* NRS 271.208; 271.280(1); 271.300. NRS 271.315 authorizes judicial review of these estimates and in no way implies a proscription of *de novo* review of additional evidence concerning the estimates themselves.

If there is to be meaningful judicial review of these crucial estimates, we conclude that district courts must be authorized to take evidence beyond that introduced before the city council, unless the property owner was clearly informed by the hearing notice that this would be the only time he or she would be permitted to introduce legally competent evidence. The simple reason is that the typical property owner will not realize he or she must present evidence to rebut the estimated benefits until *after*

any hearings before the city council, *i.e.*, on appeal to the district court. Quite understandably, property owners consider the written grievance and public hearing processes to be political, not judicial in nature. Here, this expectation was reinforced because the city's notice of the public hearing stated that the project would be cancelled if landowners representing over half of the affected property objected; the property owners here clearly considered the hearing more akin to a voice vote on LID No. 818 than a judicial hearing at which they were expected to present evidence. Accordingly, at the March 29 meeting, the landowners were not represented by counsel and they did not present any concrete evidence to show that the proposed estimates of special benefits were too high. Instead, they voiced their general opposition to the amount of the proposed assessments.

Under the rule stated in *Iacometti*, if the property owner fails to present such evidence to the city council, the owner is forever barred from doing so later. Thus, under the deferential standards of review stated in Part I-A of this opinion, the courts would rubber stamp virtually any set of estimates; indeed, appellants in the present case have not demonstrated that the estimates were invalid on the basis of the record before the Henderson City Council. This, we believe, is at odds with the provision in Chapter 271 for judicial review of these important estimates.

Accordingly, we conclude that in some cases district courts may consider evidence beyond the evidence contained in the city council record on the narrow issues of the legality of estimated assessments and benefits in connection with a LID. In deference to municipalities, however, we hold that landowners will be barred from introducing further evidence in district court if the notice of hearing given by the city pursuant to NRS 271.305 clearly states that: (1) the landowner's only chance to present evidence to demonstrate that his or her estimated assessments are excessive will be at the public hearing; *and* (2) the landowner will not be able to present any additional evidence upon subsequent appeal to district court. We do not believe that allowing limited *de novo* consideration of evidence will unduly impede or delay the application of the statutes governing creation of improvement districts, a concededly worthwhile goal. More than one other state has provided for *de novo* judicial review of special assessments proposed by municipalities. *See* In Re Morrison Single County Ditch No. 1330, 484 N.E.2d 699 (Ohio 1985); *Brown, supra.*

The notice given in the present case did not inform landowners

that they could only present their evidence at the public hearing. Thus, although the district court was fully justified in following our previous contrary decisions, the judgment of the district court must be reversed and the case remanded to give the landowners a fair opportunity to present such evidence to the district court.

II.   *The validity of the estimated special benefits and assessments established by the City of Henderson.*

Although this case must be remanded, we address the merits of appellants' arguments on the basis of the present record in order to give some additional guidance to the district courts in this and future cases. This court previously has only addressed the relatively simple cases in which there is no evidence at all of any benefits accruing to the landowners due to the improvements.[2] This is the first published case in which this court has been asked to set aside the *amount* of estimated benefits and assessments as excessive. Although the methods used by Henderson to estimate the special benefits and assessments were questionable, we hold that appellants have not demonstrated the estimates to be invalid on this record.

First, appellants have not demonstrated fraud on the part of the city because they have not proved that the city made any knowingly false misrepresentation of fact. Appellants argue that the city's construction cost estimates, which affected the benefits estimates, were purposely inflated, constituting fraud. However, the city candidly admitted its practice of inflating estimates of construction costs. We conclude that this alone does not constitute fraud, but, rather, in the present case, a method for avoiding cost overruns. Additionally, appellants correctly concede that the city followed the procedures mandated by Chapter 271 of the Nevada Revised Statutes.

Appellants' strongest argument is that the *method* used by engineers to estimate special benefits and assessments was arbitrary. Although the district court heard no new evidence to rebut the estimates, the Henderson City Attorney admitted during argument that, in making the estimates the city engineers had assumed, or determined, that the special benefits generally would equal the costs of construction. This ''costs=benefits'' assumption seems particularly suspect given that about 30 percent of the

---

[2]*Folsom, supra;* Diversified Capital v. City No. Las Vegas, 92 Nev. 621, 555 P.2d 1236 (1976) (holding that city should be enjoined from levying assessments because virtually no improvements were made and, thus, there were *no* benefits).

estimated construction costs were so-called "soft" costs for expenses such as attorneys and bonding fees, which were unrelated to the physical construction. Despite this questionable assumption, we cannot hold these estimates to be arbitrary *per se* on this record because:

> Unless there are some circumstances which show that the special benefits found are excessive and unreasonable in amount, all things being considered, *a finding by the board which in substance is based on the idea that the paving has added to the value of the lot a sum equal to the proportionate cost of the improvement* is not so unreasonable as to justify setting the assessment aside for that reason alone.

*Brown,* 416 N.W.2d at 576 (quoting Chicago & N.W.R. Co. v. City of Albion, 192 N.W. 233 (1923)) (emphasis added). If the record before this court demonstrated that the "cost=benefits" assumption was arbitrary as applied to this real property, this court could reverse these estimates. The problem in the present case, however, is that the evidence in the record before the city council on this point is scanty at best, consisting only of the engineers' largely conclusory opinion. More importantly, the property owners never introduced any evidence before the city council to rebut the "cost=benefit" assumption. Although this assumption is questionable, we will not substitute our judgment for that of the city engineers absent such evidence. Finally, we note that NRS 271.280(1) requires nothing more than an engineer's opinion in support of the estimates, however conclusory the opinion may appear. We hope, however, that, unlike the engineers in this case, city engineers will set forth in support of their estimates some firm data, such as examples of increases in value in similar properties due to similar, previous improvements.

Even if the overall estimation method used is not arbitrary, appellants may seek to show that their indivdual assessments were invalid. Accordingly, appellants make additional detailed arguments explaining why particular assessments were manifestly erroneous and why there were patently irrational discrepancies among individual assessments. While it is possible that appellants can make such showings on remand, they simply have not done so on the current record; in the absence of any concrete evidence to rebut the engineers' opinion, appellants' arguments alone simply do not demonstrate the assessments to be arbitrary or unsupported by substantial evidence.

## CONCLUSION

The method used by the City of Henderson to estimate the

special assessments to pay for the improvement district was suspect and arguably arbitrary. In deference to the expertise of city engineers, however, we will not reverse such estimates absent some evidence indicating that the method used was arbitrary or based on manifestly erroneous assumptions. Because appellants have introduced virtually no evidence to rebut these estimates, the estimates must stand. Nevertheless, we conclude that appellants were denied a fair opportunity to present such rebuttal evidence and accordingly reverse the judgment and remand this case with instructions that the district court allow appellants to adduce rebuttal evidence on the narrow issue of the validity of the estimates of special benefits and assessments.