OPINION

Per Curiam:

SUMMARY

This case concerns the funding of the railroad grade separation project (the “project”), which seeks to lower the railroad tracks through downtown Reno. In 1997, after years of attempts at funding the project, the Nevada State Legislature amended Assembly Bill 291 (the “amended statute”). This amended statute authorized the Board of County Commissioners of Washoe County (the “Board”) to impose a one-quarter cent sales tax increase. The amended statute, however, contained a condition precedent requiring the City of Reno (the “City”) to acquire written financial commitments for half the total cost of the project before the Board could lawfully enact the sales tax increase.
Thereafter, at a public hearing, the City presented evidence of its written financial commitments, and the Board passed Bill No. 1223/Ordinance No. 1047 (the “sales tax ordinance”), which authorized a one-quarter cent increase of the sales tax in Washoe County. Several local business owners, however, filed a complaint and a motion for preliminary injunction seeking to enjoin the Board from enacting the sales tax. These local business owners, which included Kenneth Nicks, Robert White, the owners of the Sundowner Hotel and Casino, George Karadanis and Robert Maloff, and the owner of the Reno Souvenir Station, Ron Drury (collectively hereinafter the “Sundowner”), argued that the statute’s condition precedent had not been met because the City had presented insufficient written financial commitments for half of the cost of the project.
After an evidentiary hearing, the district court dismissed Sundowner’s motion and complaint, ruling that the statute’s con *166 dition precedent had been met. Subsequently, Sundowner filed this timely appeal arguing, in part, that the district court erred in making this ruling. We conclude that Sundowner’s arguments lack merit. Accordingly, we affirm the order of the district court.

STATEMENT OF THE FACTS

The project proposes to lower the Union Pacific Railroad tracks through downtown Reno through the construction of a 54-foot wide, 2.1 mile below-grade, open trainway trench along the existing Union Pacific right-of-way. This depressed trainway will be crossed over by eleven Reno streets from Keystone Avenue east to Sutro Avenue. It is surmised that this project will eliminate eleven at-grade street railroad crossings, and thus allow the unrestricted flow of vehicles above the railroad tracks. The estimated time period for the completion of the project is five and one-half years, and the estimated cost is $192,848,096.00. Sundowner, however, contends that this figure will ultimately be higher because it does not include numerous additional costs, such as the cost of treatment of contaminated soil and water underlying the railroad tracks and the cost of relocation or modification of the Amtrak station in Reno.
Although the project has been discussed for many decades, the 1996 merger of the Union Pacific and Southern Pacific railroads created the opportunity for significantly increased train traffic. Therefore, since early 1996, the City began developing a funding plan. Part of this funding plan included revenue from a one-quarter cent increase in sales tax. The sales tax increase was authorized by the Nevada State Legislature in 1997 after amending Assembly Bill 291. The amended statute empowered Washoe County to enact an ordinance imposing a one-quarter cent sales tax, of which one-eighth cent was dedicated to the project. This statute, however, contained a condition precedent to the imposition of the tax, which is at issue in this case, requiring the City to present written financial commitments for one-half of the total cost of the project before the Board could impose the sales tax.
As the estimated cost of the project was $192,848,096.00, in order to satisfy the statute’s condition precedent, the City was required to provide the Board with a written financial commitment of $96,424,048.00 before the Board could lawfully increase the tax. Because the City believed it had met this condition precedent by securing financing, the Board scheduled a public hearing, on December 8, 1998, to consider enacting the sales tax authorized by the statute.
At the public hearing, the City introduced evidence of its funding commitments of money or property, including: (1) $15,344,689.00 from Union Pacific Railroad, (2) $1,834,024.00 *167 from a federal grant, (3) $458,750.00 from the Nevada Department of Transportation, (4) $13,427,947.00 in Federal Surface Transportation Program funds; and (5) $60,777,774.00 in the form of a loan from the City authorized by Resolution No. 5557 (“Resolution 5557”). The loan from the City was to be repaid with non-tax revenue, including funds generated from a special assessment district comprised of property located near the project. The special assessment was authorized by the Reno City Council on October 27, 1998.
After the public hearing, the Board enacted the sales tax increase by passing Bill No. 1223, Ordinance No. 1047, and thereby concluding that the condition precedent required by the statute was satisfied. Thereafter, the Nevada State Legislature passed Senate Bill 255 (“S.B. 255”) that explicitly ratified the acts of the Board.
On December 7, 1998, however, a day prior to the public hearing, Sundowner filed a complaint and a motion for a preliminary injunction, which it amended on December 9, 1998. Sundowner sought to enjoin the Board from enacting the sales tax increase, alleging that it had failed to satisfy the statute’s condition precedent to secure written financial commitments for at least half the cost of the project.
In response to Sundowner’s motion for preliminary injunction, the City and Washoe County filed a motion to dismiss (the “motion”), alleging that the City had fully satisfied the statute’s condition precedent.
After a full evidentiary hearing, the district court granted the City’s motion, treating it as a motion for summary judgment. In granting summary judgment, the district court ruled that the sales tax ordinance was valid, as the statute’s condition precedent requiring financial commitment for half of the project cost had been satisfied. Sundowner filed this timely appeal, alleging that the district court erred in making the aforementioned ruling.

DISCUSSION

The district court’s and this court’s review of a government agency’s determination is limited to whether the governmental body acted arbitrarily or capriciously. See City of Reno v. Folsom, 86 Nev. 39, 44, 464 P.2d 454, 457 (1970). As this is a summary judgment order, however, this court’s determination of whether the government agency acted arbitrarily is de novo, and this court will construe the facts and evidence in a light most favorable to the non-moving party. See Bulbman, Inc. v. Nevada Bell, 108 Nev. 105, 110, 825 P.2d 588, 591 (1992).
*168 In the present matter, the district court ruled that the sales tax ordinance was valid because the Board did not act arbitrarily in concluding that the City met the amended statute’s condition precedent requiring written financial commitments for half the cost of the project. We agree with the district court that the Board validly enacted the sales tax ordinance because the Board had sufficient written financial commitments before it to support its conclusion that the City had met the statute’s condition precedent.
The evidence before the Board included five written funding commitments of money or property: (1) $15,344,689.00 from Union Pacific Railroad; (2) $1,834,024.00 from a federal grant; (3) $458,750.00 from the Nevada Department of Transportation; (4) $13,427,947.00 in Federal Surface Transportation Program funds; and (5) a $60,777,774.00 loan from the City authorized by City Council Resolution No. 5557. Sundowner argues, however, that this evidence is insufficient to meet the condition precedent under the amended statute, in part, because the resolution establishing a $60,700,774.00 loan from the City was invalid.[1] Specifically, Sundowner’s attack on the validity of the loan is that there are insufficient sources identified in section two of Resolution 5557 for repayment because: (1) the income from the Union Pacific property contribution was overvalued, and (2) there could be no income from the special assessment district because it was unlawfully created.
We disagree with- Sundowner’s contention that the resolution was invalid because we see no contingency in section two of the resolution requiring that the specific sources identified generate enough revenue to repay the loan. Resolution 5557 provided that:
Section 1. The City hereby commits to expend not less than $60,700,744 on the Project . . . which can and will be repaid from sources other than the Taxes.
Section 2. The Non-Tax Portion of the Loan will be repaid with payments of special assessments (the “Assessments”) to be levied by the City against properties benefited by the Project, certain sources of income provided by property (the “Property”) to be transferred to the City by Union Pacific Railroad (“U.P.R.R.’j, and possibly federal or State grants for which a commitment has not yet been received ....
(emphasis added).
*169 The plain language of section one of Resolution 5557 sets forth an unequivocal commitment to loan $60,700,774.00 to be expended on the project. The only contingency established by this language is that the loan is not to be repaid with tax revenue. Further, although section two of Resolution 5557 identifies several sources for repayment, including the income generated from the Union Pacific property and the contested special assessments, the resolution does not mandate that repayment is contingent on the fact that the sources listed generate enough revenue to repay the loan. Indeed, the City has not even received a commitment, much less a total dollar amount, for one of the repayment sources listed in section two of the resolution—federal and state grants. Based on the plain and unambiguous language of Resolution 5557, we therefore conclude that the resolution was valid because the City had made a valid commitment to expend $60,700,774.00 on the project even if the contemplated revenue from the Union Pacific property and the special assessment district is not realized.[2]
As an aside, we note that even if there was such a contingency in the resolution, the legislature has explicitly ratified the acts of the Board and the City. A legislature may enact a curative statute to validate acts by municipalities provided both the act validated and the curative statute are constitutional. See Harris v. City of Reno, 81 Nev. 256, 260, 401 P.2d 678, 680 (1965). In Harris, we considered a challenge by several property owners to the City Council’s authority to enact an ordinance imposing sewer charges on residents. Id. In our analysis, we reasoned that any doubts concerning the validity of the ordinance had been dispelled by the legislature’s enactment of subsequent curative legislation that provided:
SECTION 1. All of the provisions of [the ordinance] . . . passed and adopted by the city council of the City of Reno . . . are hereby authorized, ratified, approved and confirmed in all respects.
SEC. 2. This act shall operate to supply such legislative authority as may be necessary to validate any and all acts performed, or proceedings taken, by or on behalf of the City of Reno, Nevada, pursuant to, or in anywise appertaining to Ordinance No. 1352.
Id. at 259, 401 P.2d at 679-80 (emphasis added).
Like the curative statute in Harris, the amendment to S.B. 255, *170 expressly ratified the actions of the Board. Indeed, S.B. 255 contains language similar to the curative statute in Harris, by providing that “[the sales tax ordinance] is hereby ratified, validated, approved and confirmed.” S.B. 255, 70th Leg. (Nev. 1999). In light of our holding in Harris, we conclude that subsequent curative legislation, mainly S.B. 255, renders the issue of the validity of the sales tax ordinance moot.
Sundowner, however, raises a novel argument concerning the constitutionality of this curative statute. Sundowner argues that the curative statute was void because this legislative enactment was unconstitutional, as it violated the separation of powers doctrine set forth in article 3, section 1 of the Nevada Constitution. Specifically, Sundowner contends that the legislature unconstitutionally interfered with the discretion and independence of the judiciary by enacting a curative statute that validated the sales tax ordinance while the issue of its validity was pending before the district court.
Indeed, we recognize that the legislature violates the separation of powers principle by retrospectively abrogating judicial pronouncements of the courts of this state through a legislative interpretation of the law. See Federal Express Corp. v. Skelton, 578 S.W.2d 1, 8 (Ark. 1979). We also recognize, however, that it is well within both the legislature’s authority and the limits of this state’s constitution to prospectively amend a statute, and thereby render a prior judicial decision interpreting that statute void. See id. at 7.
In the case at bar, we see no constitutional violation of the separation of powers principle in the curative statute before us. The curative statute did not abrogate a pending judicial controversy because the district court had already rendered its decision validating the ordinance prior to enactment of the curative statute. Therefore, in enacting a curative statute several months thereafter, the legislature did not retroactively impact the integrity of the district court’s decision; rather, the legislature merely agreed with the district court’s conclusion that the sales tax ordinance was valid.
Accordingly, we note that even assuming there was some unmet contingency implicit in the resolution that rendered the loan from the City invalid, the sales tax ordinance was expressly validated by a subsequent curative statute.

CONCLUSION

We conclude that the Board did not act arbitrarily in ruling that the sales tax ordinance was valid because the City had met the *171 condition precedent in the statute. We further recognize that the legislative validation of this municipal act was valid and constitutional because there was no retroactive abrogation of a pending judicial controversy. Finally, we conclude that the district court did not err in ruling that NRS 271.315(1) time barred Sundowner’s objection to the validity of the special assessment district. Accordingly, we affirm the order of the district court granting summary judgment in this matter.

Sundowner asserts numerous other contentions concerning the validity of the sales tax ordinance and the resolution, including that they were enacted without authority and contrary to the legislature’s intent. We have considered all contentions raised by Sundowner and conclude that they lack merit.

Because we conclude that there is no contingency in the resolution, we need not and do not reach Sundowner’s argument concerning the validity of the special assessment district.