CONCERNED BUSINESSMEN OF CATAWBA ISLAND TOWNSHIP, Appellant,

v.

OTTAWA COUNTY BOARD OF COMMISSIONERS et al., Appellees.

[Cite as *Concerned Businessmen of Catawba Island Twp. v. Ottawa Cty. Bd. of Commrs.* (1996), 115 Ohio App.3d 437.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–95–065.

Decided Oct. 25, 1996.

*John A. Coppeler* and *Randolph E. Digges III*, for appellant.

*Orla E. Collier III* and *Ronald L. House*, for appellees.

---

*Per Curiam.*

This is an appeal from a judgment of the Ottawa County Court of Common Pleas. Appellant, Concerned Businessmen of Catawba Island Township ("CBCIT"), is appealing the trial court's grant of a motion to dismiss in favor of appellees, the Board of County Commissioners of Ottawa County. For the reasons discussed below, we affirm the decision of the trial court.

The facts of this case are as follows. CBCIT is a group of marina operators and other business owners located in Catawba Island Township. On October 11, 1994, CBCIT filed a complaint against the board of county commissioners seeking injunctive and declaratory relief from the board's intentions to levy assessments upon the residents of Catawba Island Township. The assessments were to finance the construction of a regional water supply system in Ottawa County, Ohio. The facts leading up to the filing of the complaint essentially stem from a decision of the Ohio Supreme Court in *State ex rel. Williams v. Ottawa Cty. Bd. of Cty. Commrs.* (1977), 49 Ohio St.2d 247, 3 O.O.3d 375, 361 N.E.2d 1055. Neither party disputes the following facts as stated in *Williams* at 248–250, 3 O.O.3d at 376, 361 N.E.2d at 1056, as follows:

"According to a 1970 sampling of well water in Catawba Island Township by the Ottawa County District Board of Health, 54.4 percent of the wells tested were considered unsafe.

"On March 1, 1971, the board of county commissioners adopted a resolution declaring the necessity of providing a safe water supply to Catawba Island Township. At the direction of the board, plans were prepared which provided for a new supply of water for Catawba Island Township from the city of Port Clinton. These plans were submitted to and approved by the Ohio Department of Health.

"After proper notice, the board held a public hearing on April 13, 1971, for the presentation of objections to the plan, the tentative assessments and the boundaries of the assessment district.

"On October 16, 1972, the county board of health complained to the Department of Health that unsafe water supply conditions existed in Catawba Island Township and the matter was turned over to the new Ohio Environmental Protection Agency on October 23, 1972.

"By letter dated December 7, 1972, the Director of Environmental Protection directed the board of county commissioners to proceed with utmost haste with

the construction of the necessary water supply facilities in accordance with previously approved detailed plans. On the following day, the board of county commissioners responded to the director's letter and inquired whether his directions to proceed were issued pursuant to the provisions of R.C. 6103.17. By letter dated January 24, 1973, the director stated that his order requiring installation of a public water supply system was issued pursuant to R.C. 6103.17.

"On April 2, 1974, the board of county commissioners informed the director that they had authorized a consulting engineering firm to proceed with the necessary actions for the construction of the new water supply system.

"On April 18, 1974, the board of county commissioners submitted to the Environmental Protection Agency plans for a water supply and distribution system for Catawba Island Township, which provided for the extension of a trunk water main from Port Clinton, the construction of a booster pumping station, the looping of the Catawba Island Township area with a 12 inch water main, the construction of a 500,000 gallon elevated storage tank, and the construction of a distribution system of water mains. The water was to be supplied to the system by the city of Port Clinton.

"These plans were approved by the Environmental Protection Agency on June 21, 1974.

"On July 8, 1974, the board of county commissioners adopted a resolution ratifying the plans. The Board, at the same time, adopted a resolution to proceed with the construction of the water supply system.

"At the November 1974 election, a change in the membership of the board of county commissioners took place. On February 10, 1975, the board adopted a resolution rescinding all actions previously taken relating to the water supply project and also rescinded the ratification passed July 8, 1974.

"The Environmental Protection Agency has been unable to secure compliance with the director's order following the adoption of the above-mentioned rescinding resolutions.

"Subsequent to the passage of the Board's resolution of February 10, 1975, the Environmental Protection Agency conducted two samplings for the purpose of determining whether the water supply of Catawba Island Township was, in fact, still unsafe. The reports of those tests reaffirmed that the existing water supply constituted a health hazard.

"The director then requested that an action in mandamus be initiated to secure compliance with his order of December 7, 1972.

"Under the provisions of R.C. 6103.19, if the board of county commissioners fails, after a period of 30 days, after a notice and order given it by the Director of

Environmental Protection pursuant to R.C. 6103.17, to perform any act required of it by R.C. 6103.02 through 6103.30, and by any such order and notice of the director, mandamus will lie to enforce such order of the director.

"Respondents are under a clear legal duty to perform an official act. R.C. 6103.17. There is no plain and adequate remedy in the ordinary course of the law. The Court of Appeals, in allowing the writ, did not abuse its discretion."

While the board was ordered to supply a water system for Catawba Island Township in *Williams,* no such system was ever instituted. Apparently, the Director of Environmental Protection failed to initiate any further action to see that the board complied with the writ of mandamus.

Instead, approximately sixteen years later, the board proceeded with design plans for a *regional* public water system, referred to as the Ottawa County Regional Water System, to serve Portage, Bay, Salem, Danbury, Catawba Island and Erie Townships. On October 26, 1993, the board established tentative assessments for the regional water project.

In a separate action, not part of this appeal, certain Catawba Island Township property owners challenged the amount of the assessment in the Ottawa County Probate Court, in an action entitled *Come Sail Away Condominium Assoc. v. Ottawa Cty. Bd. of Commrs.* case No. 959001A.

While the *Come Sail Away Condominium Assoc.* action was pending in the probate court, CBCIT brought the present action. Essentially, CBCIT alleged that the board was liable for that portion of the proposed assessments that exceeded the amount which Catawba Island Township property owners would have owed if the board had complied with the mandamus issued in December 1972. The CBCIT also sought injunctive, declaratory and monetary relief from the board's implementation of sewer user fees.

On October 24, 1995, the trial court granted the board's motion to dismiss on the ground that the exclusive means of challenging assessments is by an action in the probate court.

It is from that judgment that CBCIT raises the following sole assignment of error:

"1.  The Trial Court erred in dismissing appellant's complaint."

Essentially, CBCIT seeks an equitable remedy for the increase in assessments due to the implementation of a new *regional* water supply system as opposed to the Catawba Township water supply system ordered under the mandamus action in December 1977. CBCIT also argues that the sewer rates are improper on the ground that the businesses are seasonal, and, therefore, the businesses should not be assessed for the winter months.

Pursuant to R.C. Chapter 6103, governing county water supply systems, and R.C. Chapter 6117, governing county sewers, a board of county commissioners is authorized to construct, maintain, and operate a public water and sewer system. The powers granted to the county commissioners include the authority to assess property benefited by the improvement. R.C. 6103.03 (governing county water systems) and R.C. 6117.02 (governing county sewers). In adopting a resolution which authorizes an assessment, the board of county commissioners must provide notice of the tentative assessment and provide an opportunity for property owners to review the plans of the proposed improvement. R.C. 6103.05(B) (governing county water supply systems) and R.C. 6117.06(B) (governing county sewers). After providing property owners a chance to voice objections or endorsements, the board of county commissioners may ratify the plans for the proposed improvement and assessments. R.C. 6103.05(C) (governing county water supply systems) and R.C. 6117.06(C) (governing county sewers).

If unsatisfied, a property owner may appeal the board's adoption of the resolution imposing assessments for water supply systems or sewers as provided for in R.C. 6117.09, which reads as follows:

"Any owner of property to be assessed or taxed for an improvement under sections 6117.01 to 6117.45 or sections 6103.01 to 6103.30 of the Revised Code, *may appeal to the probate court* from the action of the board of county commissioners in determining to proceed with the improvement in regard to any of the following matters:

"(A) The necessity of the improvement, including the question whether the cost of the improvement will exceed the benefits resulting therefrom;

"(B) Boundaries of the assessment district;

"(C) The tentative apportionment of the assessment." (Emphasis added.)

■ This court finds, to the extent that CBCIT is seeking to modify the amount of the proposed assessments, that issue is proper only before the probate court as provided for under R.C. 6117.09. In *Gallman v. Mercer Cty. Bd. of Cty. Comm.* (1953), 159 Ohio St. 253, 257, 50 O.O. 277, 278, 112 N.E.2d 38, 40, the Ohio Supreme Court held that "[t]he only three matters as to which the action of the board may be reviewed on appeal are the necessity of the improvement, *including the question whether the cost of the improvement will exceed its benefits*, the boundaries of the assessment district, and the tentative apportionment of the assessment." (Emphasis added.)

■ To the extent that CBCIT is seeking a remedy from the board's failure to comply with the writ of mandamus issued in December 1977, we also find that the present action is improper. Therefore, we find that the trial court properly

dismissed CBCIT's complaint. Accordingly, CBCIT's sole assignment of error is found not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal as provided for under App.R. 24.

*Judgment affirmed.*

MELVIN L. RESNICK, P.J., GLASSER and ABOOD, JJ., concur.