**DRILLEX, INC., Appellant,**

v.

**LAKE COUNTY BOARD OF COMMISSIONERS, Appellee.**

[Cite as *Drillex, Inc. v. Lake Cty. Bd. of Commrs.* (2001), 145 Ohio App.3d 384.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2000–L–096.

Decided Aug. 13, 2001.

*Lawrence D. Pollack, James V. Aveni* and *Joseph G. Foster,* for appellant.

*Charles E. Coulson,* Lake County Prosecuting Attorney, and *Michael P. Brown,* Assistant Prosecuting Attorney, for appellee.

NADER, Judge.

Appellant, Drillex, Inc., appeals two decisions of the Lake County Court of Common Pleas granting partial summary judgment to appellee, the Lake County Board of Commissioners ("Lake County"). The combined judgment entries completely granted summary judgment to Lake County.

Appellant, an Ohio corporation solely owned by Edward H. Tresger, owns 351.38 acres of underdeveloped and undeveloped property in Painesville Township, within the Greater Mentor Sub–District of the Lake County Regional Sewer District. Appellant's property was formerly held by Edward H. Tresger, Inc. ("Tresger") and/or Fairway Pines Development Company, appellant's predecessors in interest.

In 1977, Tresger and Painesville Joint Venture, an Ohio partnership, petitioned Lake County to extend a sanitary sewer main in Painesville Township. In this petition, Tresger and Painesville Joint Venture waived objections and consented to being assessed approximately seventy percent of the construction cost. This petition, which was accompanied by a signed acknowledgment and consent form,

contained total tentative assessments totaling $527,150. Lake County's estimated contribution of $73,000.61 was to cover the cost to over-size a portion of the sewer line. The assessments were in accordance with the special benefits conferred to the parties; Tresger's estimated assessment was $392,358.16 and Painesville Joint Venture's was $61,791.23. Appellant has fully paid its actual assessment of $438,447.13.

On February 14, 1977, Lake County accepted the petition and passed a resolution of necessity recognizing the need to extend the sewer line known as Sanitary Sewer Improvement Project No. 108–S ("108–S"). On March 25, 1977, Lake County passed a resolution to proceed with 108–S. Subsequently, the sewer line was constructed.

On July 22, 1999, appellant filed a complaint in the Lake County Court of Common Pleas alleging a governmental tort, taking without compensation, breach of contract, and seeking injunctive relief. On August 16, 1999, appellee filed both an answer and a motion for summary judgment asserting that it was entitled to sovereign immunity, no taking occurred, and no written agreement or board resolution constituting a contract existed.

On January 24, 2000, the court granted appellee partial summary judgment as to the governmental tort and breach of contract claims. On January 27, 2000, Lake County passed a resolution whereby it resolved that appellant was "guaranteed 1.4 million gallons per day of average daily flow for its property located within Sanitary Improvement Project No. 108–S." On February 10, 2000, appellee filed a supplemental motion for summary judgment, arguing that appellant's remaining claims were not ripe. On May 1, 2000, appellant filed a motion requesting that the trial court reconsider its January 24, 2000 judgment entry. On May 26, 2000, the trial court denied appellant's motion for reconsideration and granted appellee's supplemental motion for summary judgment. Appellant now appeals the judgment entries filed by the trial court on January 24, 2000, and May 26, 2000, and assigns the following as error:

"[1.] The lower court erred when it determined that Drillex did not have a valid cause of action for breach of contract against Lake County.

"[2.] The lower court erred when it failed to reconsider the granting of summary judgment after Lake County passed its January 27, 2000 Resolution acknowledging its contract with Drillex.

"[3.] The lower court erred when it ruled without explanation that Drillex failed to show that Lake County had reduced any special benefits on Drillex without compensation."

■ In its first assignment of error, appellant argues that the trial court erred in determining that a contract did not exist between the parties. Appellant

contends that the requirements of R.C. 305.25 were met by its introduction of Lake County's resolution of necessity and documents incorporated by reference therein. Thus, appellant has demonstrated its right, by contract, to 1.4 million gallons per day of average daily flow for its property located within 108–S. Appellee argues that appellant has not met the strict procedural requirements enumerated in R.C. 305.25 and that no contract exists.

R.C. 305.25, which governs the validity of contracts, provides: "No contract entered into by the board of county commissioners, or order made by it, shall be valid unless it has been assented to at a regular or special session of the board, and entered in the minutes of its proceedings by the county auditor or the clerk of the board." "The Ohio General Assembly has consistently emphasized that contractual arrangements with a county's board of commissioners are only valid if the contract has been assented to at a 'regular or special session' and 'entered in the minutes' of its proceedings by a duly authorized agent * * *." *Knox Electrical Constr., Inc. v. Huron Cty. Landfill* (June 30, 1993), Huron App. No. H–92–045, unreported, 1993 WL 235821, at * 2. In the instant case, the record is devoid of minutes by Lake County assenting to a contract with appellant or its predecessors in interest. "If a county contract has not jumped through these procedural hoops, then the contract is void." *Id.*, citing *Buchanan Bridge Co. v. Campbell* (1899), 60 Ohio St. 406, 420, 54 N.E. 372, 374 (holding contracts made in violation or disregard of statutes are void). Appellant failed to demonstrate the procedural requirements set forth in R.C. 305.25. Thus, the trial court did not err in finding that no contract existed and, consequently, appellant has no breach of contract claim.

Additionally, R.C. 5705.41 "declares void every contract or order involving the expenditure of money by a subdivision or taxing unit unless there is an attached certificate that the amount appropriated is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances." *Pincelli v. Ohio Bridge Corp.* (1966), 5 Ohio St.2d 41, 45, 34 O.O.2d 55, 58, 213 N.E.2d 356, 360. The record is devoid of an auditor's certificate. Thus, assuming *arguendo* that a contract existed, it would be void under R.C. 5705.41, due to the nonexistence of an auditor's certificate.

Further, Lake County's January 27, 2000 resolution, guaranteeing appellant a reserve capacity of 1.4 million gallons per day of average daily flow for its property, does not alter this finding. The resolution does not acknowledge that a prior contact existed between the parties. The resolution merely states that appellant paid an assessment for sewer capacity. There is no indication that appellee has breached the guarantee set forth in the January 27, 2000 resolution, *i.e.*, the record is silent as to any indication that appellee cannot, did not, or will

not provide appellant with the promised reserve capacity. For the foregoing reasons, appellant's first assignment of error lacks merit.

■ In appellant's second assignment of error, it argues that the trial court erred in denying its motion for reconsideration, filed pursuant to Civ.R. 54(B).

■ "Civ.R. 54(B) allows for a reconsideration or rehearing of interlocutory orders. The rule, when discussing interlocutory orders, states, in pertinent part, that they are 'subject to revision at any time before the entry of judgment adjudicating the claims and the rights and liabilities of all the parties.' Therefore, a motion for reconsideration would be the proper procedural vehicle for obtaining relief after interlocutory orders." *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 379, 21 O.O.3d 238, 239, 423 N.E.2d 1105, 1106, fn. 1.

In support of its motion for reconsideration, appellant argued that the January 27, 2000 resolution acknowledged the existence of a contract between the parties. Appellee argues that the resolution does not acknowledge a contract. The January 27, 2000 resolution provides that Lake County guarantees appellant 1.4 million gallons of average daily flow for its property located within 108–S. The resolution does not acknowledge a prior contract, or a current contract, but is merely a written commitment by Lake County to provide specific sewer line capacity to appellant. The trial court did not err in denying appellant's motion to reconsider its decision granting summary judgment against appellant on the claim of breach of contract. Appellant's second assignment of error is without merit.

■ In its third assignment of error, appellant argues that appellee reduced its special benefits[1] without compensation and the court erroneously found this claim not to be ripe. It argues that allowing nonassessed property owners to tap into 108–S reduces appellant's special benefit without compensation, thus constituting a taking. In support of its argument, appellant points to evidence showing that one nonassessed property owner, Atfab, was permitted to tap into the 108–S sewer line. Appellant also argues that "[b]y paying one hundred percent (100%) of the assessment, Drillex was entitled to one hundred percent (100%) of the benefit." Appellee argues that appellant's claim is not ripe because there is no evidence that appellant's special benefit, the enhancement of his property due to the sewer line, has in fact been reduced.

---

1. "The enhancement in the value of property that results from a public improvement is the special benefit that will support an assessment against that property to pay for the improvement. Such enhancement in value of such property is a benefit to its owner that accrues to him and not to the public or to the rest of the community." *Schiff v. Columbus* (1967), 9 Ohio St.2d 31, 38 O.O.2d 94, 223 N.E.2d 54, paragraph four of the syllabus.

The Supreme Court of Ohio has stated that "[t]he ripeness doctrine is motivated in part by the desire 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *.'" *State ex rel. Elyria Foundry Co. v. Indus. Comm.* (1998), 82 Ohio St.3d 88, 89, 694 N.E.2d 459, 460, quoting *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691.

Having determined that no contract exists between the parties to this dispute, we begin our analysis with R.C. Chapter 6117, which governs county sewers and sewer districts.

■ Pursuant to R.C. Chapter 6117, a county's board of commissioners is authorized to construct, maintain, and operate a public water and sewer system. "The powers granted to the county commissioners include the authority to assess property benefited by the improvement." *Concerned Businessmen of Catawba Island Twp. v. Ottawa Cty. Bd. of Commrs.* (1996), 115 Ohio App.3d 437, 685 N.E.2d 783. "R.C. 6117.30 provides the mechanism by which a county may levy assessments on landowners for the costs of constructing a sewer." *McCann v. Madison Cty. Commrs.* (Nov. 20, 2000), Madison App. No. CA99–12–032, unreported, 2000 WL 1725413.

In addition, "[w]henever the owners of all the lots and lands to be benefited by, and to be assessed for, any sewer improvement * * *, by petition in writing, request the board of county commissioners to provide for the construction, maintenance, and operation of any such improvements, describing the improvements desired and the lots and lands owned by them respectively to be assessed to pay the cost and maintenance of such improvements, and consenting that their said lots and lands may be assessed to pay the cost of such improvements and of maintenance and operation as provided in such sections, and waive notice and the publication of all resolutions and legal notices provided for in such sections, the board shall prepare the necessary plans, specifications, and estimates of cost of construction, maintenance, and operation thereof, and a tentative assessment. * * *" R.C. 6117.28.

A special assessment for the cost and expense of the construction of a main, branch, or intercepting sewer shall be in proportion to the special benefits resulting from the improvement. R.C. 6117.30.

■ In the case *sub judice,* appellant's predecessor petitioned Lake County for the sewer, waived objections, and paid its entire assessment, in 1978. However, appellant cites *Cincinnati, L. & N. Ry. Co. v. Cincinnati* (1900), 62 Ohio St. 465, 57 N.E. 229, for the proposition that "'if a sum is exacted in any instance, in excess of the value of the special benefits conferred, it is, as to such excess, in

that instance, private property unjustly taken for public use without compensation to the owner.'" *Id.* at 474, 57 N.E. at 232, quoting *Chamberlain v. Cleveland* (1878), 34 Ohio St. 551, 1878 WL 61.

Review of the record reveals that appellant has not demonstrated that a "sum has been exacted in excess of the value of special benefits conferred" upon it.

Appellant argues that permitting one property owner, Atfab, to tap-in to 108–S, without paying an assessment, while appellant paid significant assessment fees to tap-in to 108–S, constitutes a taking. The argument that such action constitutes a taking is without merit. In its May 26, 2000 judgment entry, the trial court found that one property owner[2] had agreed that an equivalent property located inside the 108–S boundary would not be permitted to tap-in, was not assessed tap-in fees for 108–S, and was assessed tap-in fees for the 73–S and 92–S sewer lines.

The law of Ohio does not require that a board of county commissioners charge subsequent property owners a tap-in fee to utilize a fully constructed sewer line. "Governmental authorities have broad discretion in establishing fees and rates and in maintaining financing schemes to support sewer systems. Such fees and rates must be reasonable with the methods and manner of financing such systems left largely with the authorities." *Haymes v. Holzemer* (1981), 3 Ohio App.3d 377, 3 OBR 441, 445 N.E.2d 681, paragraph two of the syllabus. Given the broad discretion afforded to governmental authorities in establishing financing plans to support sewer systems, we conclude that Lake County did not abuse its discretion in the instant case.

Appellant also argued to the trial court that if Atfab and others were permitted to tap into 108–S, appellee will be unable to provide the capacity required by appellant. These claims are not ripe because the record demonstrates that 108–S currently contains the 1.4 million gallons per day of reserve sought by appellant.

Appellant has not alleged any decrease in its property value or decrease it in its use and enjoyment of its property within 108–S. For the foregoing reasons, appellant has failed to demonstrate a reduction in its special benefits. Appellant's third assignment of error lacks merit.

The evidence, taken in a light most favorable to appellant, demonstrates that reasonable minds could come to only one conclusion, a conclusion that is adverse

---

**2.** While the trial court's May 26, 2000 judgment entry does not identify the nonassessed property owner, both parties herein identify the party as "Atfab" or "ATFAB."

to appellant. The trial court correctly granted appellee's motions for summary judgment, as a matter of law.

Based on the foregoing analysis, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and CHRISTLEY, J., concur.